## SORRENTINO v. UNITED STATES.
### No. 11533.

Circuit Court of Appeals, Ninth Circuit.
Sept. 4, 1947.

Rehearing Denied Oct. 17, 1947.

Walter H. Duane, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and James T. Davis, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before MATHEWS, STEPHENS, and ORR, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, Stephen Sorrentino, also known as Vincent Sorrentino, was indicted in two counts. Count 1 was based on 26 U.S.C.A. Int.Rev.Code, §§ 2550(a), 2553 (a) and 2557(b)(1).[1] It alleged that appellant, "on or about the 16th day of August, 1945, in the City and County of San Francisco, State of California, unlawfully did sell, dispense and distribute not in or from the original stamped package, a lot of smoking opium, in quantity particularly described as one 5-tael can of smoking opium."

Count 2 was based on 21 U.S.C.A. § 174.[2] It alleged that, "at the time and

---

[1] Section 2550(a) mentions opium and other drugs. Section 2553(a) provides: "It shall be unlawful for any person to * * * sell, dispense, or distribute any of the drugs mentioned in section 2550 (a) except in the original stamped package or from the original stamped package; * * *" Section 2557(b) (1) provides: "Any person who violates or fails to comply with any of the requirements of this subchapter [§§ 2550– 2565] * * * shall, on conviction, be fined not more than $2,000 or be impris-

oned not more than five years, or both, in the discretion of the court."

[2] Section 174 provides: "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States * * * contrary to law * * * or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not

place mentioned in the first count of this indictment, said defendant [appellant] fraudulently and knowingly did conceal and facilitate the concealment of said lot of smoking opium, in quantity particularly described as one 5-tael can of smoking opium," and that "the said smoking opium had been imported into the United States of America contrary to law as said defendant then and there knew."

Appellant was arraigned, pleaded not guilty and was tried. William H. Grady, Jacob Lieberman and others testified as witnesses for appellee, the United States. Appellant was convicted and sentenced on both counts and has appealed. He contends that the trial court erred (1) in sustaining objections to questions propounded to Grady and Lieberman on cross-examination and (2) in sentencing him on both counts.

First. Grady testified on direct examination that he was and had been for 4½ years an agent of the Federal Bureau of Narcotics; that on August 15, 1945, in the basement of the Uptown Hotel in San Francisco, California, he saw appellant and a Government "informer" and overheard a conversation between them;[3] that in this conversation the "informer" asked appellant, "Did you bring the can of mud?"[4] and appellant said, "No, I didn't bring it; I will later on tonight or tomorrow;" that the "informer" thereupon removed a roll of currency from his pocket and asked appellant if he wanted the money then; and that appellant said, "No, you can pay me at the time I deliver the stuff."

Grady further testified on direct examination that on August 16, 1945, he met Lieberman and the "informer" at Fortieth Avenue and Irving Street in San Francisco, gave the "informer" $375 and searched him to see that he did not have any narcotics on his person; that Lieberman and the "informer" then proceeded to a house at 1678 Forty-fifth Avenue in San Francisco; that Grady saw Lieberman and the "informer" enter the house and, shortly thereafter, saw appellant enter and, 15 minutes later, saw him leave the house; that five minutes after appellant left, Lieberman and the "informer" left the house, went to Forty-seventh Avenue and Moraga Street in San Francisco and there met Grady; and that the "informer" thereupon handed Grady "a can that appeared to contain smoking opium."[5]

On Grady's cross-examination, an objection was sustained to each of the following questions:

"Who is the Government informer?"

"Tell me, is it your own Jerome Berry, also known as Jimmy Berry?"

"Was he residing in that hotel, the Uptown Hotel, on the 15th day of August, 1945?"[6]

"Was there a man by the name of Jerome Berry, an employee of that hotel?"

"And [the person who occupied the house at 1678 Forty-fifth Avenue on August 16, 1945] was this informer that you speak of?"[7]

█ The objection was that the questions were improper because they sought disclosure of the identity of the person whom Grady called an informer. We agree with appellant that this was not a valid objection. If the person whom Grady called an informer had been an informer and nothing more, appellant would not have been entitled to have his identity disclosed;[8] but the person whom Grady

more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3 Grady testified that he went to the basement of the hotel as a result of a previous conversation with the "informer."

4 Grady testified that, to him, the word "mud" had a particular significance, and that it usually referred to opium.

5 The can was identified, was shown by expert testimony to contain smoking opium and was received in evidence as appellee's Exhibit 1.

6 Grady had testified that he knew Berry.

7 Grady had testified that he knew who occupied the house at that time.

8 Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; Smith v.

called an informer was something more. He was the person to whom appellant was said to have sold and dispensed the opium described in the indictment. Information as to this person's identity was therefore material to appellant's defense, and appellant was entitled to a disclosure thereof.[9] Hence the court erred in sustaining the objection. However, we hold that the error was harmless, for the following reasons:

Although the identity of the person whom Grady called an informer was not disclosed by Grady's testimony, it was disclosed by Lieberman's testimony. Lieberman's testimony showed that Berry was the person whom Grady called an informer; that Berry had a room at the Uptown Hotel on August 15, 1945, and was an employee of that hotel; and that Berry occupied the house at 1678 Forty-fifth Avenue on August 16, 1945.[10] Hence appellant was not prejudiced by the court's error.

Lieberman testified on direct examination that he was and had been for almost seven years a special employee of the Bureau of Narcotics; that on August 15, 1945, he met appellant in the lobby of the Uptown Hotel; that appellant asked him where the "informer"[11] was; that he told appellant, "I will call him; he is upstairs in his room;" that he (Lieberman) telephoned the "informer" and told him, "Steve [appellant] is downstairs;" that the "informer" came down in a few minutes; and that appellant and the "informer" went to the rear of the lobby and thence to the basement of the hotel.

Lieberman further testified on direct examination that on August 16, 1945, he and the "informer" met Grady at Fortieth Avenue and Irving Street; that Grady searched him and the "informer" and gave the "informer" a bundle of money; that 15 minutes later he (Lieberman) and the "informer" were in the house at 1678 Forty-fifth Avenue, when somebody knocked on the door and said, "Milkman;" that Lieberman and the "informer" opened the door; that appellant came in with two bottles of milk, gave them to the "informer" and, at the same time, pulled out a package and said to the "informer," "Here is the can of opium;" that the "informer" gave Lieberman the can of opium and gave appellant the money; that appellant counted the money; that Lieberman asked appellant, "Is all the money there?" and appellant said, "Everything is here;" that appellant left the house; that a few minutes later Lieberman and the "informer" left, went to Forty-seventh Avenue and Moraga Street and there met Grady; and that the "informer" gave Grady the can of opium.

On Lieberman's cross-examination, an objection was sustained to the following question:

"[The house at 1678 Forty-fifth Avenue] was [the informer's] home, wasn't it?"

The objection was that the question was improper because it sought disclosure of the identity of the person whom Lieberman called an "informer."[12] For reasons previously indicated, we hold that the court erred in sustaining the objection. However, the error was a harmless one; for the fact which the question sought to establish—that the house at 1678 Forty-fifth Avenue was the home of Berry, the

United States, 9 Cir., 9 F.2d 386; Mitrovich v. United States, 9 Cir., 15 F.2d 163; McInes v. United States, 9 Cir., 62 F.2d 180.

[9] Wilson v. United States, 3 Cir., 59 F.2d 390; Wigmore on Evidence, 3d Ed., § 2374, p. 756.

[10] Appellant's brief correctly states that "The alleged acts out of which the conviction arose occurred * * * between appellant and another man known to the record interchangeably as 'the informer' and Jerome Berry;" that "appellant, long before the trial, knew well enough who the informer was;" that "the whole question was an academic one;" that "the record plainly shows in a number of ways that Berry was the informer;" and that "It is clear from the record * * * that the house at 1678 Forty-fifth Avenue belonged to the informer."

[11] Lieberman's testimony showed that the person whom he called an informer and the person whom Grady called an informer were one and the same person, namely, Berry.

[12] See footnote 11.

so-called informer—was clearly established by other testimony, including that of appellant himself.

■ Second. Asserting that "The proof at the trial below established only one offense, if any," appellant contends that the court erred in sentencing him on both counts of the indictment. There is no merit in this contention. The two counts charged two distinct offenses.[13] Both were amply proved.

Judgment affirmed.

[13] Parmagini v. United States, 9 Cir., 42 F.2d 721; Silverman v. United States, 1 Cir., 59 F.2d 636; Corollo v. Dutton, 5 Cir., 63 F.2d 7.