**STATE of Missouri, Respondent,**

v.

**Willard O'Neill EDWARDS, Appellant.**

No. 46231.

Supreme Court of Missouri,

En Banc.

Nov. 10, 1958.

Kenneth K. Simon, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Harold L. Henry, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Chief Justice.

Defendant has appealed from a sentence of imprisonment in the State Penitentiary for a term of seven years imposed upon him in accord with the verdict of a jury finding him guilty of possession of a nar-

-cotic drug, to wit: heroin, contrary to the provisions of the (so-called) Uniform Narcotic Drug Act set forth in Chapter 195, RSMo 1949, V.A.M.S. (This act was materially amended subsequent to the date of the offense herein alleged, Chapter 195, RSMo 1949, Cum.Supp.1957, V.A.M.S., but the questions presented on this appeal are not directly affected thereby.) Error is predicated upon: (1) refusal of defendant's motion to suppress evidence obtained in a search of defendant's automobile following his allegedly unlawful arrest without warrant; (2) refusal of the trial court to require the arresting officer to reveal the name of an alleged informant who, immediately prior to defendant's arrest, had advised said officer that defendant was selling heroin; (3) refusal of defendant's motion for a directed verdict; (4) refusal to strike from the amended information allegations of two former felony convictions of defendant and in admitting evidence thereof; (5) the instructions given the jury on the permissible extent of defendant's punishment if found guilty, and in furnishing the jury with forms of verdict in accord with said instructions; and (6) improper argument of the cause to the jury by the prosecuting attorney.

The amended information alleged unlawful possession of heroin, a derivative of opium. It also invoked the provisions of the Habitual Criminal Act, § 556.280 RSMo 1949, V.A.M.S., by alleging two former felony convictions of defendant, one in the Circuit Court of Jackson County, Missouri, for robbery in the first degree, and one in the U. S. District Court at Kansas City, Missouri, for the purchase, possession and sale of heroin, and his final discharge from imprisonment upon compliance with the sentence imposed in each case.

The only evidence adduced at the trial on the merits was that of the State: At 1:30 a. m., on the night of July 30, 1955, Robert B. Heinen, a police officer in the Department of Police of Kansas City, while riding in a police car in company with Reserve Officer Jesse Carmichael, in-tercepted the defendant as the latter, accompanied by one Margaret Barrett, was turning his automobile around at the dead end of the intersection of 12th Street Terrace and Vine Street in Kansas City, Missouri. Over objection of defendant, the grounds of which objection are hereinafter amplified, the State was permitted to adduce further evidence tending to show that Officer Heinen then and there placed defendant and his companion under arrest, following which he searched the person of defendant, the handbag of Margaret Barrett, and also made a hasty search of defendant's automobile, in the belief that he would find narcotics. Finding none, Officer Heinen placed defendant in defendant's automobile and drove to the police station. Reserve Officer Carmichael took Margaret Barrett to the police station in the police car in which he and Heinen had driven to the scene of the arrest. Upon arrival at the station, the automobiles were parked upon the street and defendant and Margaret Barrett were taken to a room in the station, where they were left in charge of Officer Carmichael. About ten minutes after parking at the police station, Officer Heinen returned to defendant's automobile, where, following a more careful search of it, he found beneath the front seat a capsule filled with white powder and an empty capsule with traces of white powder therein. An analysis of the powder in the filled capsule showed it to be heroin.

Over objection of defendant, proof was made of his former conviction of the crimes of robbery and violation of the Federal Narcotics Law, as alleged in the amended information, his sentences of imprisonment to the penitentiary in each case and his final discharge upon compliance with each of said sentences.

It was defendant's contention at the trial and is his contention here that his arrest was unlawful and that the search of his automobile and seizure of heroin therein was in violation of the right of freedom from unreasonable searches and seizures guaranteed to him under the provisions of

Article I, § 15, of the Constitution of Missouri, V.A.M.S., and Amendment IV to the Constitution of the United States, and that defendant was thereby deprived of due process of law in violation of Amendment XIV to the Constitution of the United States. It is the State's contention that defendant was guilty of a felony, to wit: the unlawful possession of heroin; that at and prior to the time of defendant's arrest Officer Heinen had reasonable cause to believe defendant to be guilty of such felony, and that the search and seizure made thereafter was lawful.

At the pretrial hearing on the motion to suppress, Officer Heinen testified: He was assigned to the Narcotics Division of the Police Department. Defendant was a known drug addict and it had been rumored since the spring of 1955 that he was active in selling narcotics "on the street", and it was known that "narcotics were moving." During that time a certain drug addict served as an informant of witness as to violations of the narcotic laws in Kansas City. For four or five months said informant and others had reported to the witness that the defendant was selling narcotics. From past experience with said informant, the witness had found him to be reliable. About ten minutes before arresting defendant, the informant personally told the witness that defendant was selling narcotics from his car on 12th Street; that defendant would pick up a customer and take him around the corner and there make the sale; and that he had seen defendant approach a "user". This was the first time the witness had a "concrete case" that defendant was presently in actual possession of narcotics. Upon receipt of said information, the witness and Reserve Officer Carmichael, riding in a police car, went in search of defendant. They came upon him as he drove his car east on 12th Street. Margaret Barrett, a known drug addict, was riding with him. The witness and Carmichael followed defendant's car until it came to and completed a turnaround at the dead end of 12th Street Terrace and Vine, where the witness made the arrest as hereinbefore detailed.

When asked the name of the informant, the witness refused to divulge it, and the trial court denied defendant's repeated requests that he be required so to do, but did permit full interrogation of the officer as to the age, sex and habits of his informant and the methods, places and times of witness' communications with him. In so ruling, the trial judge stated that it would be logical to require, and he was inclined to require, the witness to divulge the name of his informant, but that in view of the ruling of this court in the case of State v. Bailey, 320 Mo. 271, 8 S.W.2d 57, 59, he could not do so.

Defendant cites the cases of State v. Cuezze, Mo.Sup., 249 S.W.2d 373; People v. Simon, 45 Cal.2d 645, 290 P.2d 531; Mueller v. Powell, 8 Cir., 203 F.2d 797; Hobson v. United States, 8 Cir., 226 F.2d 890. We need only discuss the first two of these cases. The Hobson case is in no wise analogous to the facts in the instant case. In the Cuezze case, the defendants were arrested without warrant as they lawfully rode in an automobile. Following their arrest, pistols were found under the right front seat of their car. Thereupon, they were charged with carrying concealed weapons. Evidence heard on their motion to suppress revealed that the arresting officers had received no report of a felony having been committed and there was no visible evidence that the defendants had committed or were committing a crime; there was no evidence that the officers had any suspicion that the defendants had committed a felony; in fact, the officers did not know that a crime had been committed. Under these circumstances, the arrest was held illegal and the evidence seized upon search of the automobile was suppressed. In the Simon case, it was held that where the arresting officer, who merely *felt* that defendant and another did not have any lawful business in warehouse district at 10:40 p. m., and who saw that the other, who was under 21, had a liquor

bottle in his possession, searched defendant first and asked questions only after his search uncovered marijuana cigarettes in his possession, and there was nothing to indicate that, had the officer confined himself to a reasonable inquiry, he would have discovered anything to confirm his suspicion that defendant did not have lawful right to be where he was, defendant was entitled to have the information set aside on the ground that all evidence against him, other than admissions, had been obtained by illegal search of his person.

The instant case presents an entirely different picture. Here, the uncontradicted evidence showed that defendant was a known narcotic addict and formerly had been convicted of selling narcotics. He had been under suspicion of selling narcotics for more than a year before he was arrested. A drug addict, who theretofore had furnished Officer Heinen with reliable information as to violations of the narcotics laws, had told him for the past several months that defendant was selling and, on the night in question, had told Heinen that defendant was at that instant engaged in selling and delivering narcotics on 12th Street by taking customers into his car and moving to another point where the sale would be made. Heinen immediately went in search of defendant and found him in an automobile on 12th Street with a known addict in his car. These facts led Heinen to a mental certainty that defendant then and there had narcotics in his possession for the purpose of sale. So believing, Heinen made the arrest.

■ By Section 84.710 RSMo 1949, V. A.M.S., police officers of Kansas City are empowered to arrest within the city "any person * * * whom they have reason to suspect of having violated any law of the state * * *." It is generally the power of peace officers within their respective jurisdictions to make arrests when a felony has been committed and they have reason to suspect the person whom they arrest. State v. Bailey, 320 Mo. 271, 8 S.W. 2d 57; State v. Howard, 324 Mo. 145, 23 S.W.2d 11, 13; State v. Johnson, 362 Mo. 833, 245 S.W.2d 43, 48; State v. Brown, Mo.Sup., 291 S.W.2d 615, 618; Mueller v. Powell, 8 Cir., 203 F.2d 797, 800.

■ We are convinced and hold that the evidence in this case warranted the trial court in finding that when he arrested defendant Officer Heinen had reasonable cause to believe and did believe that defendant was guilty of the felony of having in his possession for the purpose of sale the heroin found in his automobile following his arrest. Consequently, the search of defendant's automobile was an incident of lawful arrest rather than the arrest being an excuse for an unlawful search. A search and seizure so made is not unlawful and any evidence found in such a search is admissible. State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584–585; State v. Charles, Mo.Sup., 268 S.W.2d 830, 834–835. The trial court did not err in overruling the motion to suppress.

This brings us to defendant's next and most troublesome point: the refusal of the trial court to require Officer Heinen to divulge the name of his informant. Had the trial court required the officer to reveal his alleged informant's name, defendant might have been able to obtain evidence sufficient to convince the trial court that the officer did not have reasonable grounds to suspect that defendant, at the time of his arrest, was guilty of a felony; that his arrest, without warrant, was, therefore, unlawful and the ensuing search and seizure were violative of his constitutional rights; and that his motion to suppress the evidence should have been sustained.

The Bailey case, supra, 320 Mo. 271, 8 S.W.2d 57, upon which the trial court predicated its ruling, held that an arresting officer had the unqualified right to withhold the identity of his informant. In that case, as the defendant was driving an automobile, a sheriff arrested him and, upon search, found contraband whiskey in the automobile, resulting in defendant being charged with the crime of transporting

contraband whiskey. Upon hearing of a motion to suppress the evidence found in the car, the sheriff stated that the arrest was made following information received from a person considered by the sheriff to be reliable, but he refused to divulge the identity of the informant. Review of the trial court's refusal to require that the identity of the informant be divulged resulted in this court holding, 8 S.W.2d loc.cit. 59: "It would be against public policy to compel a sheriff or other officer to disclose the identity of the person or persons who inform him of facts tending to show that a given person is guilty of felony. If information of this character cannot be given to an officer freely and without fear on the part of the informant that his part in the arrest and prosecution of one suspected of felony will be made public, the detection and prosecution of crime will be intolerably hampered and be defeated altogether in many instances."

■ No authority was cited in support of the unqualified ruling in the Bailey case and we have found none. To the contrary, there are many cases holding that an inflexible rule is never to be announced in regard to divulging the identity of persons giving to police officers information which has a direct bearing upon the constitutional rights of persons subjected to criminal action as a result of such information. Many of these cases are cited in Wigmore on Evidence, 3rd Ed., Vol. VIII, Sec. 2374. There the rule is stated, thus: "A genuine privilege for communications, on the fundamental principle of privilege, must be recognized for the communications made *by informers to the Government;* because such communications ought to receive encouragement, and because that confidence which will lead to such communications can be created only by holding out exemption from a compulsory disclosure of the informant's identity: * * *

\* \* \* \* \* \*

"This privilege is well established, and its soundness cannot be questioned.

"But it is subject to certain limitations, inherent in its logic and its policy: * * *

\* \* \* \* \* \*

"(4) Even where the privilege is strictly applicable, the trial Court may compel disclosure, if it appears necessary in order to avoid the risk of false testimony or to secure useful testimony. * * *" (Emphasis that author's.)

So too, in effect, is the rule stated in the Model Code of Evidence, Page 168, Rule 230. And, in the recent case of Roviaro v. United States, 353 U.S. 53, 60–62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, it is said: "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * *

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In Sorrentino v. United States, 9 Cir., 163 F.2d 627, 628, a distinction was made between one who plays a part in a criminal transaction and one who is a mere informant. It was there said: "If the person whom Grady called an informer had been an informer and nothing more, appellant would not have been entitled to have his identity disclosed; but the person whom Grady called an informer was something more." That such a distinction existed was also noted in United States v. Conforti, 7 Cir., 200 F.2d 365. In Wilson v. United States, 3 Cir., 59 F.2d 390, 392, it was said

of the privilege: "There is, however, an exception to this rule or a modification of this general doctrine, in that it gives way to another doctrine of the law when the two conflict. A trial court must dispose of the cause before it. If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case, disclosure will be compelled." See also Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 83 L.Ed. 151; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650. Contra, see United States v. Keown, D.C., 19 F.Supp. 639, 645–646.

In the carefully reasoned case of People v. Gonzales, 1956, 141 Cal.App.2d 604, 297 P.2d 50, it was held that, under the circumstances of that case, the trial court had not erred in refusing to require the arresting officer to divulge the name of his informant. In so holding, the court said, 297 P.2d loc. cit. 52: "Knowledge of the name of the 'operator' who had evidently gained accurate information with reference to appellant's possession of narcotics could not have proved the latter guiltless. The disclosures by the arrest show that the information was correct. Not only would such knowledge have been of no service in an attempt to establish appellant's innocence, but it would have affected the public welfare adversely." However, the court went further and said: "It is not just any 'tip' upon which an officer may act. * * * The officer's information must have come from a reliable source and the officer must act in good faith in testifying that he had received his information from a reliable person, *and such good faith must pass the scrutiny of the trial judge.* No abuse of discretion having been shown, the court's ruling was correct." (Emphasis ours.)

No good purpose will be served by further citation of authorities. Each case is ruled in the light of its facts. Obviously, it would simplify matters if the question of divulgence or non-divulgence of the identity of any informant could be finally ruled one way or the other so as to apply to all cases, as was attempted in State v. Bailey, supra, 320 Mo. 271, 8 S.W.2d 57. It is clear, however, that if due regard be given to the demands of justice to the public on the one hand and the constitutional rights of the defendant on the other, each case must be considered on its merits.

 As is said by Wigmore, reiterated in People v. Gonzales and assumed in Roviaro v. United States, supra, the question of whether disclosure of the identity of a non-participating informant is essential to assure a fair determination of the issue in any given criminal case is for the trial court in the first instance. In the instant case, the trial court was prevented from a free exercise of that discretion by the ruling in State v. Bailey, supra. The conclusion here reached that the question is for the trial court in the first instance, of necessity, limits this court to review of such a ruling. Consequently, the judgment must be reversed and the cause remanded, to the end that the trial court, upon another trial, may, in the exercise of its discretion, determine whether the defendant can have a fair trial without requiring the officer to disclose the name of his informant.

 Defendant next contends that the search of defendant's automobile some ten minutes after it had been left unattended outside the police station and the finding of the heroin at that time did not make submissible a case of his possession of the heroin found. Unquestionably, the fact that defendant's automobile was unattended for ten minutes before it was searched has a direct bearing upon the ultimate issue of whether defendant did possess the heroin found, but we are convinced that under all the circumstances in evidence the finding of the jury upon that issue was supported by substantial and competent evidence. The contention must be denied.

Inasmuch as defendant has raised another question that will confront the trial court in any subsequent trial, we should consider it. That question is whether the

Habitual Criminal Act is applicable to the penal provisions of the Narcotics Act. It is defendant's contention that the penalties provided for plural violations of the latter Act constitute a complete penal code within themselves and that the Act does not contemplate or reasonably admit of application of the penalties provided for second offenders under the Habitual Criminal Act.

In State v. Newstead, Mo., 280 S.W.2d 6, it was held that the Habitual Criminal Act was applicable to a conviction under the Narcotics Act and a sentence of two years (the maximum provided for a first offense under the Narcotics Act) was upheld. The point here made, however, was not raised in the Newstead case, and it is not controlling in the instant case.

The penal section of the Narcotics Act, hereinafter referred to as Old § 195.200, as it existed at the time defendant was arrested and prior to amendment in 1957,[1] provided:

"Any person violating any provision of this chapter shall be deemed guilty of a felony, and upon conviction thereof shall be punished, *for the first offense,* by imprisonment in the state penitentiary for a term of two years, or by imprisonment in the county jail for a term of not more than one year or by a fine of not more than one thousand dollars or by both such fine and imprisonment; and for any subsequent offense, by imprisonment in the state penitentiary for a term of not less than two years nor more than seven years, or by a fine of not more than five thousand dollars or less than two hundred and fifty dollars." (Emphasis ours.)

Section 556.280(2) of the Habitual Criminal Act provides:

"(2) If such subsequent offense be such that, upon a first conviction, the offender would be punished by imprisonment for a limited term of years, then such person shall be punished by imprisonment in the penitentiary for the longest term prescribed upon a conviction for *such first offense.*" (Emphasis ours.)

It is at once seen that if the Habitual Criminal Act is applied to the defendant as a first offender under the Narcotics Act *of this State*—insofar as the record shows he is—then his maximum punishment should have been assessed at two years imprisonment, instead of seven years, the maximum for "any subsequent offense", as was assessed by the jury in accord with the instructions of the court.

 It is suggested by the State, however, that defendant's prior conviction under the *Federal* Narcotics Act made him a second offender within the meaning of Old § 195.200, thereby subjecting him to the penalties prescribed therein for a "subsequent offense". If such a meaning is to be found within the wording of that section— it is explicitly so provided in New § 195.200 —we ought to construe it accordingly. However, a careful study of the old section leaves us convinced that in its enactment the Legislature did not have in mind violations of the narcotics laws of any jurisdiction other than Missouri, else it would have so stated; as does New § 195.200.

The matters herein discussed and decided make it unnecessary to review other allegations of error arising out of the same subject matter, such as the allegations of the information as to former convictions, error in the admission of evidence as to former convictions, the instructions and forms of verdict relating to such convictions. Neither are other trial incidents

1. The penal section as amended (§ 195.200 RSMo 1949, Cum.Supp.1957, V.A.M.S.) clearly seems—although we do not decide—to intend such a complete code of penalties for successive violations of the Uniform Narcotics Act as not to contemplate or admit of application of the Habitual Criminal Act to certain, if any, of the *offenses for which specific penalties are provided.*

of which complaint is made likely to occur at a future trial.

The judgment is reversed and the cause remanded.

STORCKMAN, J., concurs.

EAGER, J., concurs in separate opinion.

HYDE, J., concurs and concurs in separate opinion of EAGER, J.

LEEDY, J., concurs in result and concurs in separate concurring opinion of EAGER, J.

DALTON, J., concurs in result and dissents as to parts of opinion in separate opinion.

WESTHUES, J., concurs in result and concurs in separate opinion of DALTON, J.

EAGER, Judge (concurring).

I feel that the situation here does require a clarification of the law concerning the disclosure of the name of an informant. I wish, however, to re-emphasize the fact that, as I understand the case, we are by no means directing the trial court, in this or any other case, to require the disclosure of the name of the informant. We are merely releasing that court from the prior and somewhat rigid limitations, in order that it may exercise its discretion in considering the matter; therein it must seek to balance the strong public policy which gives rise to the privilege of such communications against the possibility of any real and substantial prejudice to the defendant, in the bona fide preparation of his case, from a failure to divulge the name. The good faith of the arresting officer is at least a highly material element. Disclosure is certainly not to be required in order to gratify any morbid curiosity or a spirit of revenge. There is much in the opinion of Judge DALTON which should be seriously considered in any such hearing. It well may be that a stronger showing of necessity would be required than has previously been made.

In the light of these explanations, added merely by way of emphasis, I concur.

DALTON, Judge (dissenting in part and concurring in result).

I respectfully dissent from that portion of the opinion which holds that the cause must be reversed and remanded to give the trial court an opportunity to exercise his discretion as to whether or not the state's witness, on a hearing of a motion to suppress evidence, should be required to divulge the name of his informant.

I dissent because I think the record in this case shows that it would have been a clear abuse of the trial court's discretion to have required a disclosure of the informant's name. Under the facts of this case there could have been no error in denying disclosure and appellant was not prejudiced thereby. If the trial court properly ruled the issue presented (and I think it would have been error and an abuse of discretion to have ruled it otherwise), it is immaterial that the court might have made an erroneous ruling, except for the fact that he thought such result was foreclosed by the opinion in State v. Bailey, 320 Mo. 271, 8 S.W.2d 57, 59.

Defendant was charged with possession of narcotics and the record shows that the charge was based upon the fact that narcotics were found in defendant's automobile after his arrest. I fully agree with the holding that the arrest was lawful.

There were two motions to suppress evidence. The first motion sought "to suppress evidence of narcotics taken from the automobile of the defendant." Evidence was heard by Judge John H. Lucas, Judge of Division No. 7 of the Jackson County

Circuit Court, and the motion was overruled January 23, 1957.

On January 29, 1957, defendant filed a further or second motion "to suppress evidence of narcotics taken from the person of the defendant." Evidence was heard on this motion before Judge Paul A. Buzard, Judge of the Criminal Division of the Circuit Court of said county. Practically the same evidence was again offered showing the finding of heroin in defendant's automobile after his arrest. The facts tending to show probable cause to believe a felony had been committed are correctly reviewed by the opinion. Judge Buzard overruled this second motion to suppress the evidence and he indicated that he was not inclined to overrule the decision of the Supreme Court in the Bailey case, apparently believing he was foreclosed by that decision from ruling otherwise.

If the narcotics were found in defendant's car upon his arrest, we are unable to see how a required disclosure of the name of informant would assist defendant in proving his innocence of the charge. The credibility, weight and value of the informant's testimony would not be an issue in the trial of that cause.

The Bailey case states the established rule, as follows: "It would be against public policy to compel a sheriff or other officer to disclose the identity of the person or persons who inform him of facts tending to show that a given person is guilty of felony. If information of this character cannot be given to an officer freely and without fear on the part of the informant that his part in the arrest and prosecution of one suspected of felony will be made public, the detection and prosecution of crime will be intolerably hampered and be defeated altogether in many instances."

I believe that the rule stated in the Bailey case evidences a sound public policy, vital to the protection of the public. The rule should not be departed from, except in a most exceptional case and under exceptional circumstances, and I am convinced from the reading of this record that the present case is not a case requiring a departure from this well-established rule.

An annotation in 83 L.Ed. at page 155, states the general rule as follows: "It is a general rule, subject to an exception hereinafter discussed, that the names of persons who are the channels of information leading to the detection of crime are not to be disclosed. This rule is usually observed by the courts upon a principle of public policy, and from regard to public interests, for the reason that such disclosure can be of no importance to the defense, and may be highly prejudicial to the public in the administration of justice by deterring other persons from making similar disclosures."

The exception to the rule is stated in 83 L.Ed. at page 157, as follows: "There appears to be an exception to the general rule, which is that if disclosure of the informer's identity is necessary to show *the innocence of one accused of a crime,* then the rule must yield to a stronger one which says that one is not to be condemned when his innocence can be established." (Italics ours.)

The rule is stated in an annotation in 1 L.Ed. at page 1998, as follows: "The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest and not to protect the informer. * * * The privilege against disclosure of the identity of an informer is, of course, as applicable in pre-trial proceedings in which the disclosure is sought as at the trial itself."

While the facts testified to by officer Heinen were entirely sufficient to show probable cause to believe that a felony was being committed and to authorize a lawful

arrest, the record fails to disclose any manner in which the disclosure of the informant's identity could be relevant or helpful to the defense of the accused on the charge against him.

The facts upon which the decision in the case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, is based, are totally different from the facts in this case. In that case in an opinion by Burton, J., six members of the United States Supreme Court held that the applicability of the privilege of non-disclosure depends on the particular circumstances of each case and held the principle inapplicable in that case. As to count (2) it was pointed out that the informer had taken a material part in bringing about the possession of the heroin by the petitioner, was the sole participant together with the petitioner, in the transaction charged, might be a material witness as to whether the petitioner knowingly transported the drugs as charged, and was the only witness in a position to amplify or contradict the testimony of the government witnesses. As to count (1) it was pointed out that it was evident from the face of the indictment charging petitioner with a sale of heroin to John Doe that the informer was a participant in and a material witness to that sale. See summary 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

The case of Sorrentino v. United States, 9 Cir., 163 F.2d 627, is somewhat the same kind of a case as the Roviaro case where the informant was something more than a mere informer.

In the case before us there is no occasion for a disclosure of the informant's name. We have only to weigh the morbid curiosity of the defendant to know the name of the individual who caused him to be caught with the drug in his possession, and his personal desire to effectively and forever remove the threat of any future disclosure by such informer, against the public interest in keeping open the channels by which the officers of the law get information to assist in the enforcement of the law and the protection of society.

The application of the rule against disclosure of an informant's name cannot be considered and construed abstractly or apart from the hard facts of life in the particular case and the absolute necessity of securing the cooperation of members of the public in the enforcement of the law and, of course, there must necessarily be a balance of interest between the rights of the individual and the rights and necessities of society to protect itself against the criminal element. Claimed rights of the individual, which tend to destroy the social group and prevent or destroy its ability to effectively protect itself from destruction, must be considered with great care.

In this case, except for the well-established general rule evidenced by the decision in the Bailey case, the trial judge might have erroneously ruled that the name of the informer be disclosed and, if that had been done, the damage would have been done and there would have been no appeal from the order, since the state cannot appeal. Under the facts of this case any other order than the order made would have been erroneous and the appellant was not prejudiced by any failure of the trial court to exercise his judicial discretion.

Further, we think it wholly immaterial to any issue before the court on the hearing of the motion to suppress evidence whether the trial judge would have believed the informer or would have considered him a credible and reliable witness. The issue was whether the officer believed the informer and had reasonable cause to believe him. The informer was a drug addict. The officer had been dealing with him for some time and had found the information furnished by him to be reliable. The informer was not, and in most cases is not, the kind of person ordinarily referred to as a reliable, high type citizen and worthy of belief by all. Such persons are not the kind of people that obtain and have the information that can assist the officer in the enforcement of the law. They not only do not have the information but like the officers they cannot get it except

from those that do know. Officers must depend on the individuals who know about such facts and are willing to tell and officers may rely on those they have found to be reliable and dependable in furnishing such information.

For the reasons stated, I respectfully dissent from that part of the opinion which holds that "the judgment must be reversed and the cause remanded, to the end that the trial court, upon another trial, may, in the exercise of his discretion, determine whether the defendant can have a fair trial without requiring the officer to disclose the name of his informant."