## DROUIN *v.* STATE

[No. 141, September Term, 1959.]

*".

*Decided April 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Nicholas J. Fotos* for the appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Osborne Duvall, State's Attorney for Anne Arundel County,* and *John A. Blondell, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Having been found guilty by the Circuit Court for Anne Arundel County, sitting without a jury, on the first two counts of each of two separate indictments, after consolidation by agreement for the purposes of trial, and being sentenced to confinement as a result thereof, the defendant appeals. The first indictment contained three counts, charging him with burglary, larceny and receiving stolen goods; the second, likewise in three counts, charged him with burglary, statutory theft and receiving stolen goods. No question is here involved concerning the counts that charged him with receiving stolen goods.

Harvey J. Collinson, his wife and daughter left their home located at 604 S. Crain Highway, Glen Burnie, Maryland, around 7:00 P.M. on May 22, 1959, and returned home that same evening at approximately 10:00 P.M. They then discovered that someone had broken into and entered their home during their absence. Upon entering their home, it appeared to have been ransacked; someone had apparently rifled their bureau drawers and scattered the clothing that had been therein. Shortly thereafter, Collinson telephoned the Ferndale Police Station and reported the breaking and entering. Three police officers drove to the Collinson home sometime after the telephone call, but prior to midnight. They investigated the premises and were told by Collinson that a watch, a .22 caliber pistol and a Ronson lighter were missing. During this period of investigation, Sergeant Gleim received information from several people that a person described as the appellant was a boarder in the house next door to the Collinson's and was seen about 8:00 P.M. on May 22, 1959, "* * * act[ing] in a suspicious manner, seemed to be retreating to hiding places when anybody approached or cars came up and down the Crain Highway with bright lights." Shortly after midnight, in the early morning of May 23, 1959, a taxi-cab pulled up in front of the house next door (where the appellant had a room) and the appellant was seen getting out of the cab, but apparently changed his mind and got back into the cab. The cab then made a U-turn and headed back in the direction from whence it had come. Officers Gleim and Jager got in one patrol car and Officer Golebiewski operated the

other car. One squad car overtook the cab and forced it to come to a stop by pulling in front of it and the other closed in behind it. The three officers approached the cab and the appellant got out of the cab and was advised by Officer Gleim that he was under arrest. They proceeded to search the appellant's person and the cab. They seized articles of personalty which were later identified as articles missing from the Collinson house and the residence of one Alvin Wolfe, which had also been broken and entered the same night. The officers failed to find a diamond ring reported later to be missing by the Collinsons. Subsequent to the appellant's arrest, the breaking and entering of the Wolfe residence was reported. Some of the articles seized were later identified by Mr. Wolfe as being the articles missing from his house. The appellant did not make any statements of admission or confession.

He was indicted by the grand jury and arraigned before the Circuit Court of Anne Arundel County, and pleaded not guilty in each case. Before his trial, the court appointed counsel to defend him, who requested and was granted permission to withdraw appellant's pleas in order to submit two motions in writing: a motion to dismiss the indictments and a motion to suppress the evidence. The court overruled the motion to dismiss and postponed its ruling on the motion to suppress until some appropriate time during the course of the trial. During the trial the court overruled appellant's motion to suppress the evidence and at the termination of the State's case, the court overruled the appellant's motion for directed verdicts on each and every count. It is from these rulings that this appeal is taken.

## I

The first count of each indictment charged that the defendant, "feloniously and burglariously did break and enter the dwelling house," etc. The appellant objects to the use of the word "feloniously," contending that the offenses of which he was accused in the first counts were misdemeanors; therefore his motion to dismiss them should have been granted. *Whittington v. State,* 173 Md. 387, 196 A. 314.

His entire argument in this regard is based upon a state-

ment in *State ex rel. Copeland v. Warden,* 194 Md. 717, 718, 70 A. 2d 813, (1950), a *habeas corpus* proceeding, wherein this Court said: "Burglary, under the Maryland statute, Article 27, Section 33, is not a felony. *Bowser v. State,* 136 Md. 342, 344 [1] * * *." The accused here was indicted under Code (1957), Article 27 [all references hereafter made to the Codes will be to Article 27, unless otherwise specified], Section 30. At the time of the decision in *Copeland,* (1950), this Section 30 was Section 33 of the 1939 Code, which had not at that time been supplanted; hence, if the Court were, in reality, referring to the 1939 Code, it would lend considerable substance to the appellant's contention. However, it seems clear that the Court, in the *Copeland* case, was referring to Section 33 of the Code of 1912, which was then Section 34 of the 1939 Code. It supported the statement that "burglary, under the Maryland statute, Article 27, Section 33, is not a felony" by the immediate citation of the *Bowser* case, which specifically dealt with Section 33 of the 1912 Code [Section 32 of the 1957 Code], and held that the offenses described therein constituted misdemeanors and not felonies.

Moreover, Section 30 of the 1957 Code, under which the defendant was indicted reads:

> "Every person, his aiders, abettors and counsellors, who shall break and enter any dwelling house in the nighttime with the intent to steal, take or carry away the personal goods of another of any value therefrom shall be deemed a felon and shall be guilty of the crime of burglary."

It is immediately noted that the statute explicitly says that whoever violates it shall be deemed a *felon* and shall be guilty of *burglary.* A felon is a person who has committed a felony, *Black's Law Dictionary* (4th Ed.), p. 743, *Webster's New International Dictionary of the English Language* (2nd Ed.,

---

1. Unquestionably, the unfortunate failure to state the specific Code referred to in this sentence has resulted in some confusion upon the subject. Is Burglary a Felony or Misdemeanor in Maryland? 11 Md. L. Rev. 336; Code (1957), Article 27, Section 30,—— Ed. Note.

1953), p. 931, and burglary was one of the common-law felonies. We have no hesitation in concluding that this Court in the *Copeland* case, in the sentence quoted, referred to Section 33 of Article 27 of the 1912 Code, and that the offense described in Code (1957), Article 27, Section 30, constitutes a felony.

## II

In this assignment of error, the appellant asks us to rule that his motion to suppress the evidence taken from the accused at the time of his arrest should have been granted on the ground that his arrest was unlawful and the evidence obtained as a result of this unlawful arrest should not be used against him at his trial. As evidence is admissible against an accused in Maryland whether lawfully obtained or not in felony cases, *Davis v. State,* 189 Md. 640, 645, 646, 57 A. 2d 289, this objection could only be aimed at the misdemeanor count, and the appellant limits this claim of error to the "admissibility of that evidence (the evidence taken from the accused as a result of his search after arrest) as applicable to the second count (statutory theft)" of the second indictment, relying upon Code (1957), Article 35, Section 5, [The Bouse Act].

As we have held above that the appellant's motion to dismiss the burglary counts was properly overruled, he stands properly convicted of burglary under the second indictment and sentenced to one year's confinement for the same; so, from a practical point of view, even if he be successful in this contention, it will avail him little relief. However, as burglary and theft are separate and distinct offenses, and the defendant should not be improperly convicted of any offense, we shall consider and determine the question.

There can be little doubt that a police officer may lawfully arrest a person when he has reasonable ground to suspect that a felony has been committed, whether or not in his presence or view, and reasonable ground to believe the arrestee has committed it. *Mason v. Wrightson,* 205 Md. 481, 486, 109 A. 2d 128; Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 159. And, after a lawful arrest has been made, the officer, as an incident thereto, may search the

offender and seize any evidence of the crime. *Mason v. Wrightson, supra,* and cases cited.

At the trial, the State attempted to show that the arresting officers had reasonable grounds to suspect that a felony had been committed and that the appellant was the guilty party, in order to establish a lawful arrest so that the evidence obtained by them, in a search incident thereto, would be admissible against the accused relative to the misdemeanor count as well as the counts that charged felonies.[2] To this effect, the State offered proof that the officers knew the Collinson home had been burglarized and certain personal property stolen therefrom. The officers then testified that they had been informed by certain neighbors of the accused (he roomed next door to the Collinsons) that he had been seen in the rear of the Collinson home shortly after the Collinsons left it on the evening of May 22 acting in a suspicious manner which we have previously described. As stated above, this evidence was offered for the specific purpose of establishing "probable cause" for the subsequent arrest of the accused. The attorney for the defendant then asked: "Who gave you this information?" The officer replied: "I'd rather not reveal that unless I have to." The court immediately said: "You don't have to tell us. * * *."

Professor Wigmore says [3] a genuine privilege for communications, on the fundamental principle of privilege, must be recognized for the communications made by informers to the Government; because such communications ought to receive encouragement, and because that confidence, which will lead to such communications, can be created only by holding out exemption from a compulsory disclosure of the informant's identity. In this statement, he is supported by the cases and text-writers alike. See *McCormick, Evidence,* Section 148; 3 *Wharton's Criminal Evidence,* (12th Ed.), Section 795; *McCoy v. State,* 216 Md. 332, 140 A. 2d 689; *Roviaro v. United States,* 353 U. S. 53, 59 (1957); *Sorrentino v. United*

---

2. The appellant specifically directed and limited his objection under this heading to the misdemeanor count.

3. 8 Wigmore, Evidence (3rd Ed.), Section 2374.

*States,* 163 F. 2d 627 (C. A. 9th, 1947). Additional cases will be cited later.

But this statement from *Wigmore* is the general rule; and it is subject to certain limitations and exceptions, inherent in its logic and its policy, that are as well established as the rule itself. Professor Wigmore (Section 2374) lists four such limitations, and, in the instant case, we are concerned only with the fourth, namely, that "[e]ven where the privilege is strictly applicable, the trial court may compel disclosure, if it appears necessary in order to avoid the risk of false testimony or to secure useful testimony." Professor McCormick (Section 148) expresses the same principle in slightly different language by saying that when the privilege is asserted by the State in a criminal prosecution, and the evidence of the identity of the informer becomes important to the establishment of the defense, the court will require the disclosure, and, if it be still withheld, that the prosecution will be dismissed. Wharton (Section 795) states that the general rule is one of policy which will be followed unless it conflicts with a rule of justice, with the distinction being materiality. When the name of a person from whom a police officer has received certain information is material to the issue it cannot be withheld, but, if it be immaterial the courts will not compel its disclosure. See also 2 *Underhill, Criminal Evidence* (5th Ed.), Section 327.

The escape from the privilege has been frequently invoked where the question arises as to the existence of probable cause for an arrest or seizure without a warrant. *Roviaro v. United States, supra; McCormick, op. cit.,* Section 148, n. 11. Of course, when a sufficient showing of probable cause is afforded by what the arresting officers saw and heard themselves, the information received from informers is of little importance and disclosure of their identity will not be required. *Scher v. United States,* 305 U. S. 251, 254.

A recent case decided by the Supreme Court of California, *Priestly v. Superior Court,* 330 P. 2d 39 (1958), illustrates well, and applies, the principle being discussed. In that case, police officers, acting solely upon the information of two informers and without a warrant, went to the defendant's

apartment and knocked on the door. When the defendant answered, he was placed under arrest and he and his apartment were searched. Narcotics were discovered on his person and in his apartment. On the issue of probable cause for making the arrest, the defendant objected to the officers' testimony concerning the knowledge that they had received from the informers unless the informers' identities were made known. This objection was overruled. The Supreme Court stated that the communications of the informers were material to the issue of reasonable cause to make the arrest and seizure, recognized that the policy conflict was between the encouragement of the free flow of information to law enforcement officers [4] and the policy to discourage lawless enforcement of the law, and then went on to adopt as its rule the observation made by the Supreme Court of the United States in *Roviaro v. United States, supra,* 353 U. S. 53, 61, *i.e.*: "Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication."

The California Court, in stating its reasons for the ruling, said:

> "If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying in-

---

4. California recognizes the privilege by its code. Section 1881, subdivision 5, Code of Civil Procedure.

formation from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue. Such a requirement does not unreasonably discourage the free flow of information to law enforcement officers or otherwise impede law enforcement. Actually its effect is to compel independent investigations to verify information given by an informer or to uncover other facts that establish reasonable cause to make an arrest or search. Such a practice would ordinarily make it unnecessary to rely on the communications from the informer to establish reasonable cause. When the prosecution relies instead on communications from an informer to show reasonable cause and has itself elicited testimony as to those communications on direct examination, it is essential to a fair trial that the defendant have the right to cross-examine as to the source of those communications. If the prosecution refuses to disclose the identity of the informer, the court should not order disclosure, but on proper motion of the defendant should strike the testimony as to communications from the informer."

See also, *Hill v. State,* 118 So. 539, 540, (Miss.) ; *Wilson v. United States,* 59 F. 2d 390, 392, (C. A. 3rd) ; 13 N. Y. U. Intra. L. Rev. 141, 147-152; *Mapp v. State,* 114 So. 825, 826, (Miss.) ; *State v. Edwards,* 317 S. W. 2d 441 (Mo. 1958) ; *United States v. Keown,* 19 F. Supp. 639 (D. C. Ky.), cited with approval in the *Roviaro* case, *supra,* 353 U. S. 53; *United States v. Blich,* 45 F. 2d 627 (D. C. Wyoming).

It is stated in *Keown, supra:*

"Every accused person has the right to cross-ex-

amine on material facts every witness who testifies against him. This has been the rule ever since the law became certain and stabilized, and is a part of due process, which found its expression in the Fifth and Sixth Amendments to the Constitution. See Hale's History of the Common Law, page 145; Starkie on Evidence (2d Ed.) Vol. 1, page 160.

"When the government calls a witness whose testimony is based in part on that of an informer, it subjects the witness to cross-examination and the informer to whatever peril may arise out of such cross-examination. It is a sound rule to keep secret information furnished to the state of violations of its laws, but this commendable public policy must yield to a higher, or at least an equal, right accorded to an accused to have a court investigate the facts material to his offense in a criminal prosecution, and sometimes the departments of government will be put to a choice of either foregoing a criminal prosecution or disclosing the source of material information necessary to the conduct of orderly judicial procedure."

On the other hand, courts of high authority have ruled that compulsory disclosure is not mandatory in all cases dealing with probable cause. In *United States v. Li Fat Tong,* 152 F. 2d 650, the Second Circuit Court upheld the refusal of the trial judge to compel disclosure of the informer whose information led to the arrest on the ground that knowledge of the name would not appear to have aided the defense at the trial. The Court of Appeals of the Fifth Circuit, speaking through Judge Hutcheson, agreed with the *Tong* ruling in *Cannon v. United States,* 158 F. 2d 952, cert. denied 330 U. S. 839, 91 L. Ed. 1286, rehearing denied 331 U. S. 863, 91 L. Ed. 1869, holding the trial judge to have been justified in refusing to compel disclosure of the informer's name, where there was only weak corroboration of the informer's information. In *Goetz v. United States,* 39 F. 2d 903 (5th Cir.), officers arrested the accused in a building other than his home for making liquor, acting pursuant to a tip of an informer. The appellate Court held that it was not error for the trial court,

in his discretion, to refuse to compel the government agents to give the name of the informer. In *Mitrovich v. United States,* 15 F. 2d 163 (9th Cir.), a government witness testified that premises in which liquor was found were pointed out to him by an informer. The appellate Court held it was not error for the trial court to have sustained an objection to a question asking the witness to name the informer.

In *McInes v. United States,* 62 F. 2d 180 (9th Cir.), *cert. den.* 288 U. S. 616, 77 L. Ed. 989, the officer who stopped a car and arrested the occupant upon finding liquor in the car, was not required to tell the name of the informer who told him the car would be carrying contraband.

The Court of Appeals for the Eighth Circuit in *Nichols v. United States,* 176 F. 2d 431, held that the accused was not entitled to have disclosed the name of the informer who had furnished the government with probable cause to believe he would be in his car with a load of liquor at the time and at the place where the agents arrested him without a warrant.

Judge Murrah, for the Court of Appeals for the Tenth Circuit, said in a probable cause case that "* * * in the public interest, the identity of the informant is privileged, unless it becomes relevant and helpful to the defense * * *. Within this general rule the matter of disclosure rests largely in the discretion of the trial court." *United States v. One 1957 Ford Ranchero Pickup Truck,* 265 F. 2d 21, 26.

Some State courts have also taken the view that the decision as to whether or not to compel disclosure of the informer's identity in probable cause cases is in the sound discretion of the trial judges. In *State v. Edwards, supra,* 317 S. W. 2d 441 (Sup. Ct. Mo. en Banc), a reliable informer told police that accused, whom they knew, was selling narcotics from his car. They followed accused and, seeing a known drug addict in the car with him, stopped the car and arrested him. The Court held that there was reasonable cause to believe accused had committed a felony. In a prior case the Missouri Supreme Court had held that an arresting officer had the unqualified right to withhold the identity of the informer. The trial court, in the case under discussion, had felt bound by that case and declined to require disclosure

of the name of the informer. The Court modified its prior holding, saying (p. 446) : "* * * there are many cases holding that an inflexible rule is never to be announced in regard to divulging the identity of persons giving to police officers information which has a direct bearing upon the constitutional rights of persons subjected to criminal action as a result of such information," and went on to conclude that, "[e]ach case is ruled in the light of its facts * * * if due regard be given to the demands of justice to the public on the one hand and the constitutional rights of the defendant on the other, each case must be considered on its merits * * *. As is said by Wigmore * * * and assumed in *Roviaro v. United States, supra,* the question of whether disclosure of the identity of a non-participating informant is essential to assure a fair determination of the issue in any criminal case is for the trial court in the first instance."

In *Simmons v. State,* 281 S. W. 2d 487 (Tenn.), the lower court failed to take the case from the jury because the arresting officer could not give the name of the informer whose information furnished probable cause for arrest without a warrant. The Court held disclosure was in the sound discretion of the trial judge. The Court said (p. 492) : "* * * it is evident that the position of our original opinion must be sustained, that is, that it is a discretionary matter with the trial judge as to whether or not he requires the officer to give the name of the informant when testifying about this arrest in the absence of the jury." Also cf. *Hudson v. State,* 243 S. W. 2d 841 (Tex. Cr. App.).

While there is much logic and sound reasoning in the *Priestly* case and the quoted portion of its opinion clearly points out the defendant's position in most cases where the probable cause for his arrest is based wholly, or necessarily in part, on information received from an informer, we do not deem it necessary nor desirable to establish such a hard and inflexible rule as is stated in that case. Of course, disclosure may be necessary in many instances as the only means available to afford the traverser an opportunity to establish that no informers did, in fact, exist; or, if they did exist, they did not transmit the information claimed. On the other hand,

there may be circumstances that call for the trial judges to exercise their sound discretions as to whether disclosure should be required.

We think the reasonable and proper rule after a careful consideration of all of the authorities, to be that in criminal cases where the probable cause for a defendant's arrest depends wholly, or in part, on information received from a non-participating informer, if the name of the informer is useful evidence to vindicate the innocence of the accused, lessens the risk of false testimony or is essential to a proper disposition of the case, disclosure should be compelled, or the evidence obtained by reason of the arrest and search suppressed. *State v. Edwards, supra,* 317 S. W. 2d at page 447; *Wilson v. United States, supra,* 59 F. 2d at page 392; 8 *Wigmore, Evidence* (3rd Ed.), Section 2374. If the accused asserts any substantial ground indicating that the identity of the informer is material to his defense or the fair determination of the case on the issue of probable cause the trial court should require the informant's name to be given (or the evidence suppressed) so that the informant may be summoned and interrogated if it be necessary to do so in order to determine whether or not the officer had probable cause to make the arrest. *Simmons v. State, supra,* 281 S. W. 2d 487. "Of course, it is well established that the so-called successful result of an unlawful search and seizure has no bearing upon its legality and cannot be considered." *United States v. Blich, supra,* 45 F. 2d 627. The restrictions upon searches and seizures are designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. *Jones v. United States,* 362 U. S. 257.

In the instant case the trial judges did not purport to decide whether the names of the informers were material to the defendant's defense or the determination of the issue of probable cause. While the record gives indication that the attack of the defendant was on the existence of probable cause, assuming the officers to have heard what they said they were told and to have seen what they said they saw and not on

whether they had in fact received the information on which they claimed to have acted, or their credibility, we think the defendant was entitled to have had a proper exercise of the trial court's discretion as to whether disclosure was required in the interest of justice. The evidence without the informers' communications was insufficient to establish probable cause for the defendant's arrest. His only defense to the misdemeanor count was to show that his arrest had been made without probable cause, and, therefore, the evidence obtained by his subsequently being searched was inadmissible. Under these circumstances the names of the informers could have been necessary in order to afford the accused an opportunity to show, if possible, that the officer arrested him without probable cause. The officer did not state that he knew the informers to be reliable people, that they had ever furnished reliable information before nor anything else about them other than they were neighbors of the accused. The names also could have been necessary to afford the accused an opportunity to rebut, if possible, the testimony of the officers, as well as to prevent the possibility (without the slightest reflection upon the integrity of the officers instantly involved) of false testimony. In situations of this nature, it may be possible for the accused to establish that no such informers exist, or, if they do exist, they did not transmit the information claimed; but, if an officer be allowed to establish the probable cause for making an arrest by hearsay information that is alleged to have been received, without a thorough inquiry by the trial judge to satisfy himself of the reasonableness of the officer's reliance on the informers, or any requirement that his source of knowledge be disclosed, or possibility that the hearsay evidence will be rebutted, it places very precious rights of the individual in serious peril. For the reasons, and under the authorities named above, we hold that the names of the informers should have been disclosed to the traverser in accordance with his request, or the testimony relative to the information received from the informers and taken from him by reason of his search stricken. This will require a reversal of the judgment of conviction under the theft count of the second indictment.

### III and IV

These final contentions of the appellant may be considered together. He claims that the evidence was insufficient to sustain the court's finding that he was guilty of statutory grand larceny under the second count of the first indictment and that the breaking and entering occurred in the nighttime under the burglary charges contained in the first count of each indictment. He argues that there was no evidence that he was ever in possession of the ring alleged to have been stolen from the Collinson home, and, without the fact being established that he took the ring, the State failed to prove that he stole property of the value of $100 or more. Code (1957), Article 27, Section 340.

We have repeatedly stated our duty when reviewing the sufficiency of the evidence to sustain a conviction in a criminal proceeding. In *Clay v. State,* 211 Md. 577, 580, we said, "The function of this Court is merely to decide whether there was evidence, or proper inference from the evidence, upon which the trial court could find the defendant guilty."

The question as to whether or not larceny has been committed is usually one of fact and the question as to who committed it is one of fact, and either question may be proven by direct proof or circumstantial evidence. If there be no direct evidence on either point, it is our duty to determine whether the evidence adduced is sufficient to support rational inferences that larceny has been committed and the accused is the one who perpetrated the crime. In this case, we have little difficulty on either point. There was direct testimony that Mrs. Collinson owned a diamond ring, which was in her home prior to the burglary, and was missing immediately thereafter and never found. There was evidence, admitted without objection, that indemnification for the loss had been made by an insurance carrier. There was also direct evidence that the Collinson home had been broken, entered and ransacked not more than a few hours before certain of the personal articles stolen from the Collinson home were discovered upon the person of the defendant. These facts, if believed by the trial court (and evidently they were), were clearly sufficient, we think, to support the inferences that the ring was

stolen and that it was stolen by the accused. Cf. *Hoy v. State*, 85 N. E. 2d 493, 496 (Ind.) ; *State v. Zekich*, 132 A. 289 (N. J.) ; *Bord v. United States*, 133 F. 2d 313, 314 (Ct. of Appls. D. C.).

We also find ample evidence in the record to support rational inferences that the breakings and enterings were after dark. *Bowser v. State, supra; Hochheimer, Criminal Law* (2nd Ed.), Section 275. Both the Collinsons [first indictment] and the Wolfes [second indictment] left their homes around dusk, about 7:00 P.M. on the evening of May 22, 1959. The Collinsons returned around 10:00 P.M. and the Wolfes around midnight, each to find that their homes had been broken and entered. The appellant was seen at the rear of the Collinson home and between it and the house next door at about dusk, the approximate time when the Collinsons and the Wolfes left their homes, and also after dark, acting in a suspicious manner by darting and hiding behind bushes and the chimney when anyone would appear or when he was brought into view by the lights of passing automobiles.[5] The appellant lived in a rooming house next door to the Collinson home, entrance into it (the Collinson home) had been made by cutting the screen on the patio which was to the rear. The Wolfe home was some little distance from the Collinson residence. And the accused was apprehended shortly after midnight in a taxi-cab returning to his place of residence next door to the Collinsons. We think the triers of facts could logically and rationally deduce that one who lives next door to a dwelling that he is going to enter by cutting the screen on the ground level would normally await until after dark to do so. Especially is this true when the Collinsons did not leave their home until about 7:00 P.M. and the accused had been seen acting in a suspicious manner in the rear of their dwelling, shortly after dark, by hiding behind bushes, a lumber pile and the chimney. We also think the trial court could rationally infer that the Collinson home was entered before the Wolfes' was, due to the fact that the appellant was seen at the rear of the Collinson home at about the time the Collin-

---

5. No motion was made to limit this evidence to the question of probable cause.

sons left and shortly thereafter; and when he was apprehended he was in a taxi-cab returning from somewhere. The probabilities are that had he entered the Collinson residence after the Wolfes', he would simply have walked to his place of abode next door to the Collinsons and would have had no need for the taxi-cab. We therefore conclude, as stated above, that the evidence amply supported rational inferences that both breakings and enterings were after dark.

> *Judgment in No. 4653 affirmed. Judgment in 4654 affirmed on first count of the indictment, and reversed on second count and case remanded for a new trial on said second count.*