**Wade Cooper JAMES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45412.**

Court of Criminal Appeals of Texas.

March 14, 1973.

Rehearing Denied May 1, 1973.

James W. Lee, III, Dallas (On Appeal Only), for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is the sale of marihuana; the punishment, fifty (50) years.

---

We are met at the outset with the trial court's refusal to require the State to disclose the name of the informer. Upon examination of the record, we conclude that Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, is dispositive of the question before us. In Roviaro, supra, Roviaro and the informant, John Doe, traveled a distance in the informant's Cadillac to a place where Roviaro alighted from the automobile, walked a few feet to a tree, picked up a package, returned to the Cadillac, deposited the package, and walked away. This was the transaction upon which the prosecution was based. These facts were established by the testimony of Officer Bryson, who was secreted in the trunk of the Cadillac, and Officers Durham, Fields and Sims, who followed the Cadillac.

In the case at bar, Officer Hunter and the informant travelled in the informant's automobile, driven by him, for a distance and came to a stop at a Club where they met appellant who came to the driver's side of the informant's automobile with a paper sack in his hand. When appellant arrived he greeted both Hunter and the informant and handed Hunter the paper bag behind the informant's head. Upon leaving he told Hunter and the informant he would see "us" later. This was the transaction upon which the prosecution was based. These facts were established by the testimony of Hunter, who testified that he was working "with" the informant, and Officer Voyles, who followed informant's automobile.

In Roviaro, supra, the U. S. Supreme Court said:

". . . that the identity of . . . an informer must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense."

In that opinion the Supreme Court described John Doe, the informant, stating that he:

". . . had helped to set up the criminal occurrence and had played a prominent part in it."

In the case at bar, as in Roviaro, supra, the informant helped set up the criminal occurrence and played a prominent part in it. *The informant told Hunter where they were driving to and who they would meet.* When they met, appellant greeted both the informer and Agent Hunter. He created an atmosphere of confidence during critical moments and *he would have been able to testify directly about the very transaction constituting the crime.*

We conclude, as the Court did in Roviaro, supra, that:

"Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction."

See also Miller v. United States, 5 Cir., 273 F.2d 279; Gilmore v. United States, 5 Cir., 256 F.2d 565; Lopez-Hernandez v. United States, 9 Cir., 394 F.2d 820; and United States v. Roberts, 5 Cir., 388 F.2d 646.

Nothing we here hold is contrary to our discussions in Leal v. State, Tex.Cr.App., 442 S.W.2d 736; Durham v. State, Tex. Cr.App., 466 S.W.2d 758; Ware v. State, Tex.Cr.App., 467 S.W.2d 256; Yantis v. State, Tex.Cr.App., 476 S.W.2d 24; Albitez v. State, Tex.Cr.App., 461 S.W.2d 609; and Porter v. State, Tex.Cr.App., 436 S. W.2d 159, because in those cases we found that the informant was neither present with the accused at the occurrence of the alleged crime, nor a material witness to the transaction, nor a material witness as to whether or not the accused knowingly committed the crime.

For reasons stated the judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

The majority has dealt a severe blow to the entire system of police undercover work and has put in jeopardy the lives of those who engaged in this dangerous, distasteful yet necessary part of the burden of stamping out the sales of narcotics.[1] In my opinion, this result has been brought about by its misinterpretation of the holding of the United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, and a misapplication of excerpts therefrom.

In Roviaro, the Supreme Court held that the lower court erred in allowing the government to refuse to disclose the identity of its informer under the facts of that case where the informer ". . . had taken a *material part* in bringing about the possession of certain drugs by the accused, had been *present* with the accused at the occurrence of the alleged crime, and might be a *material witness* as to whether the accused knowingly transported the drugs as charged." (Emphasis supplied.) Roviaro v. United States, supra, at 55, 77 S.Ct., at 625.

Appellant's opportunity to cross-examine the actual participant, Special Agent Hunter, was available and was used. In Roviaro, supra, Officer Bryson, who had secreted himself in the trunk of John Doe's car, testified about a conversation between John Doe and Roviaro, not about a conversation between himself and Roviaro. The most prominent distinguishable characteristic of Roviaro, supra, and the instant case is that in Roviaro, supra, the government based its entire case on testimony from witnesses about the informer's role in the crime. In the instant case the evidence only shows the informer as being present, and the State does not rely on his actions to sustain its case.

Further, the evidence here shows that the informer could not have thrown any doubt on appellant's identity or on the identity of the package. Both Special Agent Hunter and Voyles, who witnessed the transfer a short distance away, had previously known appellant and positively identified him on the date of the offense. The package was handed to Hunter behind the head of the informer. According to this record, the informer never handled the package as the informer did in Roviaro, nor did he look inside the package.

How could he have been a material witness as to whether or not appellant knowingly transported the narcotics?

Entrapment or the possibility thereof is not a logical possibility from the evidence nor did appellant claim entrapment. In fact, appellant did not advance or attempt to advance any defensive theory. Instead, the record shows that appellant's counsel through his cross-examination of Special Agent Hunter further emphasized that the transaction occurred between appellant and Special Agent Hunter.

The informer was present at the time of the transaction but his presence was not such as to give an "atmosphere of confidence" during the critical moments and he would not have been able to testify about the contents of the brown bag. See Miller v. United States, 273 F.2d 279 (5th Cir. 1960); cf. Gilmore v. United States, 256 F.2d 565 (5th Cir. 1958). The facts here are similar to those in Willoughby v. State, 481 S.W.2d 893, where this Court held it was not error to refuse disclosure where the informer took Willoughby to the undercover agent and introduced them, then left just prior to the sale of marihuana to the agent and returned after the transaction was completed. Special Agent Hunter testified that appellant greeted both him and the informer. He further testified that appellant knew him as "Jim" and that he had had the occasion to see appellant more than one time.

---

1. It is common knowledge that informers have a somewhat less life expectancy than the average person. See President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 198 (1967).

The majority quotes from Roviaro, supra:

". . . that the identity of * * * an informer must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense." 353 U.S. at pages 61, 62, 77 S.Ct. at page 628.

They continue, stating that the United States Supreme Court described John Doe, the informant, by saying that he ". . . had helped to set up the criminal occurrence and had played a prominent part in it." Id. at page 64, 77 S.Ct. at page 629.

Herein lies a critical omission. The Supreme Court continued the above quote:

His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the *only* witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. * * * Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case." Id. at 64, 77 S.Ct. at 629. (Emphasis supplied.)

The majority says that because the informer told Hunter where they were driving and who they would meet, he helped set up the crime and played a prominent part in it. They also state that his presence created an air of confidence during the critical moments of the very transaction constituting the crime. The following testimony of Special Agent Hunter demonstrates that the transaction occurred only between appellant and himself:

"Q. (Mr. Neil, Assistant District Attorney) What did your conversation consist of, sir?

"A. (Hunter) As Mr. James approached the vehicle, he greeted us, he said, 'How is it going', and we said all right, and at that time he handed a bag through the window behind the informant's head.

"Q. I will ask you whether or not he greeted you specifically or not?

"A. He greeted both of us.

"Q. Good, he greeted both of you specifically?

"A. Yes.

"Q. And this bag he handed behind, how did he do that, will you describe this?

"A. He leaned over the driver's side of the vehicle, the window was down, and with his right hand he put it behind the informant's head, and I took the bag. Well, when we first —before he handed it to me, we asked him, or I asked him, do you have the stuff, the marijuana—

"MR. DONOSKI (Defense Counsel): I didn't hear that question you asked him.

"THE WITNESS: Yes Sir.

"MR. DONOSKI: Okay.

"MR. NEIL: And you asked him if he had the stuff, the marijuana, and then what did he reply?

"A. He said he did.

"Q. And what did you then do, what was your conversation then?

"A. Well, then, he handed it through the window behind the informant's head, and I took the package with my left hand, as soon as I took it, I gave him $100 official Government money.

"* * *

"Q. I will ask you if you had further conversation about that brown bag when he handed it to you?

"A. Yes, sir, as soon as he had handed it to me, I said, it is light, man. I said, you are doing me wrong. And he said, well, that is all right, he said, I will make it up on the next one. He said, if I wanted two pounds for $200 that he would give me a good weight the next time.

"Q. All right. I will ask you what was inside that bag?

"A. A green vegetable matter which—

"* * *

"Q. All right, based on your experience as such, I will ask you if you were able to form an opinion as to what that green leafy vegetable substance was?

"A. Yes, sir.

"Q. What was it?

"A. Marijuana.

"* * *

"Q. All right. I will ask you what you then did after you received the marijuana and you exchanged your money for the stuff?

"A. Then Mr. James said he was in a hurry, that he had to leave, and he would talk to us later.

"Q. Okay. And what did you then see Mr. James do?

"A. He re-entered the vehicle that he had driven up in and drove the opposite direction we were facing. He was facing one direction and we were facing the other direction on Throckmorton."

There is no indication in the record that the informer lured appellant into making the sale to Special Agent Hunter. Nor was any evidence offered to show that the informer helped set up the criminal occurrence. Indeed, Special Agent Hunter testified that as a result of his conversation with a confidential informer, he and the informer went together in the informer's car and parked in front of the Fink Mink Club. On cross-examination appellant's counsel did not offer nor attempt to offer any evidence with respect to the informer's role. Also, when the State rested its case in chief, appellant's counsel requested a few minutes recess which was granted. When the State rested and closed, the appellant rested and closed.

Had appellant any evidence to offer or defensive theory to advance he could have requested a recess to secure witnesses. There was no suggestion that the informer could have been a material witness for the defense.

Appellant has not met the test as laid down by this Court in Acosta v. State, 403 S.W.2d 434 (1966):

". . . we hold, as we have in the past, that it is only those cases which were described by the Supreme Court of the United States in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639, that the name of the informer should be disclosed. That is, where the informer 'had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly' committed the act." At page 437.

In that same opinion this Court went on to say that from the holding of the opinion of the Supreme Court of the United States in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, the Court does not intend to extend the rule announced in Roviaro v. United States, supra. In Rugendorf the Court discussed the attempt of the petitioner to bring his case within Roviaro, but distinguished it, saying that in Roviaro the informer had played a direct and prominent part, as the sole participant with the accused, in the very offense for which the latter was accused. That Court, quoting from Roviaro, supra, 353 U.S. at 62, 77 S.Ct., at 699, said the

necessity for disclosure depends upon "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." This Court has continued to follow this distinction. Acosta v. State, supra. In our opinion in Wright v. State, Tex.Cr.App., 420 S.W.2d 411, this Court said:

> "Recently, this court, in Acosta v. State, Tex.Cr.App., 403 S.W.2d 434, pointed out that under the opinion in the Roviaro case the name of the informer must be disclosed only in those cases where the informer " 'had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly" committed the act.' "

The record is clear, appellant has not met the test as laid down in Roviaro v. United States, supra, and followed by this Court in Acosta v. State, supra, and Wright v. State, supra.

It was observed in Roviaro v. United States, supra, that early decisions established that the scope of the privilege was in the discretion of the trial judge. The Supreme Court of the United States did not disturb that proposition but merely gave some guidelines to be used; in fact, in McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62, it said:

> "What Roviaro thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials."

It is also noted that the evidence reflects that appellant apparently knew the informer or at least knew the person in the car with Hunter but made no attempt to subpoena him as a witness. Therefore, I would agree with Justice Clark in his dissent in Roviaro, supra, when he said that the trial court's failure to require disclosure, even if erroneous, is not prejudicial where the appellant knows his identity.

For reasons stated, no reversible error has been shown. I would affirm the judgment of the trial court.

ROBERTS, Judge (dissenting).

I respectfully dissent, and feel that disclosure of the informant's name is not required in this case, for the following reasons: there was no opportunity to "plant" the drugs on appellant as in Roviaro; neither entrapment nor any other affirmative defense was raised or even suggested by appellant; and the present informant was an observer of the actual transaction and not an active participant. In summary, no particularized need has been shown as to the necessity for revealing the name of the informant.