**STATE of Missouri, Plaintiff-Respondent,**

v.

**Clarence McCANN, Defendant-Appellant.**

No. 37163.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 31, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Nov. 12, 1976.
Application to Transfer Denied
Jan. 10, 1977.

Charles D. Kitchin, Public Defender, James C. Jones, Frank R. Fabbri, III, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

Clarence McCann was convicted of possessing heroin, a Schedule I, Missouri Controlled Substance, § 195.200(1) RSMo 1969, V.A.M.S., and sentenced by the court under § 556.280 RSMo 1969, V.A.M.S., to ten years imprisonment. He appeals alleging as error: (1) the court's denial of his motion to suppress narcotics seized from his person in a search not incident to a lawful arrest nor in compliance "with the constitutional requirements for a search warrant, and none of the exceptions to the warrant apply";

and (2) denial of defendant's request for disclosure of the State's informant's identity. We affirm.

On June 14, 1974, St. Louis Police Officers Robert Letterman and Joseph Mokwa, working in an unmarked police car, met an informant who told them that defendant, whom he named and described, was selling heroin near the intersection of Vandeventer and St. Louis Avenue. The officers had spoken with this informant many times and had used information from him five or six times leading to several convictions during the preceding year.

Driving to an alley near the intersection he had indicated, the three saw defendant and one Wilfred Jones, a known drug user, seated in the doorway of a building fronting on Vandeventer. The informant left the officers after pointing out defendant. Using binoculars, Letterman and Mokwa maintained surveillance of defendant and Jones for about thirty minutes, observing five or six known drug addicts who approached defendant and apparently engaged in transactions in which "exchanges" were made. The officers then placed defendant under arrest; and searching him, Officer Letterman discovered a Kool cigarette package containing thirteen capsules of material which he believed to be heroin. Subsequent police laboratory analysis confirmed this fact and it was these heroin capsules which appellant unsuccessfully sought to suppress by his motion, contending they were not seized incident to a lawful arrest.

█ If the arrest was lawful, though warrantless, the officers had express statutory authority to conduct the search and seize the evidence. Section 195.135(2) RSMo 1969, V.A.M.S., provides: "Any peace officer of the state, upon making an arrest for a violation of this chapter, shall seize without warrant any controlled substance . . . in the possession . . . of the person . . . arrested, providing said seizure shall be made incident to the arrest."

A warrantless arrest on probable cause was held constitutionally sufficient to sup-

port a search of the suspect's person and seizure of heroin found during that search in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); and the search may extend to the area of his immediate control. *Chimel v. California,* 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Drake,* 512 S.W.2d 166, 169[1] (Mo.App.1974).

■ The issue turns on the presence or want of *probable cause* at the time of arrest. " 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States,* supra, [338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)]. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, [69 L.Ed. 543, 555, 39 A.L.R. 790]." *Draper v. United States, supra,* 395 U.S. at 313, 79 S.Ct. at 333. Seeking to define the phrase, it has been stated in *State v. Gant,* 490 S.W.2d 46, 47–48[2–5] (Mo.1973): " '[W]e are dealing with the probability, and not the certainty, that an offense has been or is being committed. While probable cause implies that the information which has come either directly or indirectly to the arresting officers' knowledge must rise above mere suspicion of criminal activity, it at the same time need not be tantamount to that quantum of proof which would sustain a conviction of guilt.' [cases cited] The test is whether the arresting officer had 'reasonable ground to suspect that the person arrested has committed a felony.' " The court went on to note that: "Information from an informer who is reasonably considered by the police officer to be reliable justifies an arrest, and the informer's information need not be first hand."

The rule of probable cause has been described as a practical non-technical concept "affording the best compromise that has been found for accommodating . . . often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. United States, supra,* 338 U.S. at 176, 69 S.Ct. at 1311; *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ Here the officers had substantial detailed knowledge from a demonstrably reliable informant whose assistance had led to several convictions in the preceding year. The informant told them defendant was then selling heroin at a named location. Defendant was found where the informant said he would be and during a thirty minute surveillance the officers observed five or six known drug addicts approach and appear to engage in transactions with defendant in which it appeared exchanges were made. From this we find there was probable cause to arrest defendant and perceive no violation of his constitutional rights in the subsequent search.

Defendant relies on *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); however, in that case the officer merely observed the appellant speaking with a number of drug addicts over a period of eight hours. He had no other knowledge of the appellant's activities, he saw no transactions taking place, and had no information of the substance of the conversations. The case at bar is clearly distinguishable both on the facts and the issue in dispute. The State in *Sibron,* unlike the case before us, abandoned any claim on appeal that the officer had probable cause to arrest the appellant.

Other authorities cited by defendant[1] involve either warrantless searches not in

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972);

*Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

connection with lawful arrest or the permissible scope of a search and have little application and are not controlling here. On this record we find no error in the ruling of the trial court denying the motion to suppress. Defendant's contention is denied.

For his final point defendant contends the court erred in not compelling disclosure of the informant's identity. In *Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–629, 1 L.Ed.2d 639 (1957), the Supreme Court stated: "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [citing cases] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation . . . Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way . . . We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *See State v. Edwards*, 317 S.W.2d 441, 446[4] (Mo. banc 1958), adopting the language of *Roviaro*; *State v. Yates*, 442 S.W.2d 21, 25[10] (Mo.1969); *State v. Hubble*, 494 S.W.2d 358, 361[2–3] (Mo.App.1973). It has been held that the determination of whether a defendant can have a fair trial without requiring disclosure of an informant "is a matter resting within the discretion of the trial court." *State v. Yates, supra* at 25[9]; *State v. Hubble, supra* at 361[4].

The courts have distinguished between participant informants, that is, those who are active in introducing police officers to the suspect or in setting up the criminal act and simple informants who merely provide information. The likelihood that fundamental fairness will require the disclosure of the identity of the latter group is substantially less. See *State v. Edwards, supra* at 447[4]; *State v. Yates, supra* at 25[11, 12]. In the present case the informant's only role was providing advance information, which was followed by police investigation and fact determination leading to the arrest. His testimony or cross-examination would not have affected the fundamental issue of defendant's guilt or innocence. "In *State v. Sellaro*, 448 S.W.2d 595, 598[2] (Mo.1969), this court applied, on this issue, the rule followed in Illinois and which met the approval of the United States Supreme Court in *McCray v. Illinois* [386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)]. The rule so applied is that when the issue is not guilt or innocence, but probable cause for an arrest, the identity of the confidential informer need not, as a constitutional requisite to a fair trial, be disclosed 'if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.' " *State v. Boyd*, 492 S.W.2d 787, 791–2[3, 4] (Mo.1973), cert. den., 414 U.S. 1069, 94 S.Ct. 579, 38 L.Ed.2d 475 (1973). Here the defense was given the opportunity to cross-examine the officers at great length in the motion hearing. We find no error in the trial court's refusal to disclose the identity of the informant.

The judgment is affirmed.

WEIER, P. J., and McMILLIAN, J., concur.