STATE of Missouri, Respondent,

v.

Vincent WANDIX, Appellant.

No. 61201.

Supreme Court of Missouri,
En Banc.

Oct. 19, 1979.

Rehearing Denied Nov. 14, 1979.

James J. Knappenberger, Shaw, Howlett & Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Vincent Wandix, was convicted in the Circuit Court of St. Louis County,

Missouri, of selling a controlled substance (§ 195.020, RSMo 1969), and his punishment was assessed at imprisonment for a term of ten years. Following rendition of judgment and imposition of sentence, an appeal was perfected to the Eastern District of the Court of Appeals. The case was transferred here after opinion. We decide the case the same as on original appeal. Mo.Const. Art. V, § 10.

On March 16, 1976, an indictment was filed in the Circuit Court of St. Louis County charging appellant with the sale of heroin to undercover detectives on July 23, 1975.

At trial the State introduced the testimony of officers Leeman Dobbins and Leon Bates of the St. Louis City Police Department and Officer Michael McDonald and chemist Rodger Dale Corcoran of the St. Louis County Police Department. Appellant introduced the alibi testimony of Pierre and Deschiell Wandix, his brothers, and of Unis Taylor and Albert Hirsch, friends.

The testimony of the officers showed the following:

Officers Bates and Dobbins met Officer McDonald at the office of the St. Louis County Police Department in the early evening on July 23, 1975. A confidential informant was with Officer McDonald. Officer McDonald was not previously acquainted with the informant. He was passed along to him at the beginning of his shift with an assignment to survey the undercover City officers and informant as they made a drug transaction. Officer McDonald received reliable information from the informant on a substantial number of occasions subsequent to the one at issue. The informant was not previously known to Officer Dobbins or Officer Bates. Dobbins did not use the informant at any time subsequent to the incident at issue. Bates did not testify as to any subsequent use.

The officers and the informant proceeded in two cars to the Beechum Park area of the County where they were to meet a drug dealer named Vincent Wandix. Wandix was not personally known to Dobbins. Bates may have seen him before. In Beechum Park, McDonald provided loose surveillance by driving around the area. Bates was dropped off at a corner to provide close surveillance while Dobbins and the informant met Wandix. The informant introduced Dobbins to Wandix as his "partner." After a brief exchange of words, Wandix told them to follow him to a residence at 942 South Taylor.

Dobbins, the informant and Wandix proceeded to the South Taylor address in two cars. Wandix drove a Cadillac. Dobbins and the informant followed in their car. Officer Bates was picked up and again dropped off near the South Taylor address by Dobbins. After arriving at 942 South Taylor, Dobbins entered the residence with the person identified and introduced by the informant as Wandix and purchased $20 worth of heroin from him. There is an uncertainty as to whether the informant entered the residence. Dobbins testified that he did not, that he remained in the car parked outside. Bates testified that the informant did accompany Dobbins and Wandix into the house. There is no claim or indication that anyone other than Dobbins, Wandix, and possibly the informant was in or at 942 South Taylor. The appellant was identified in court as the seller of the heroin by both Dobbins and Bates.

After completing the transaction, the officers regrouped and returned to the County Police offices where the purchased substance was turned over to the police chemist, Rodger Corcoran, and determined to be heroin.

At the close of the trial, the jury returned a verdict of guilty.

The essential issue on appeal is whether the informant's identity should have been disclosed to appellant.

Appellant contends the trial court erred in overruling his motion to disclose the confidential informant.

The State contends that appellant failed to properly raise and preserve the disclosure issue and that the trial court properly protected the identity of the informant.

█ The State, in its brief, presents two reasons for not reaching the merits of the disclosure issue. The first is that appellant's motion was not timely under Rule 25.31. That rule provides, in relevant part,: " * * * motions for discovery shall be made not later than twenty days after arraignment in the court having jurisdiction to try the offense charged." Motions to Disclose informants should ordinarily come within the discovery time limit since Rule 25.39, enacted simultaneously with Rule 25.- 31, addresses the circumstances in which the identity of an informant is subject to disclosure. It would certainly seem desirable to make motions to disclose informants within Rule 25.31 limits, where possible, since timely motions would avoid delay, surprise and confusion.

However, the question of the timeliness of the motion is not properly raised in this case. The prosecutor did not oppose the motion on grounds of timeliness at trial. The trial judge took the motion under consideration, heard testimony on the confidential nature of the informant and the informant's relation to the transaction at issue, and specifically ruled the motion on the · merits of disclosure. In these circumstances, this assertion by the State is without merit.

█ The second reason given by the State for not reaching the merits of the disclosure issue is that appellant failed to properly raise and preserve the issue at trial. The State contends: "The argument that identity is a crucial issue in the case and that therefore the 'unidentified individual' was a necessary and material witness for the appellant, for that reason, is advanced for the first time on appeal. For this reason this point is not preserved for review, because never presented to the trial court in the context of a mistaken identity situation."

The issue as to disclosure does not appear, from the record, to have arisen until cross-examination of Officer Dobbins. When appellant's attorney attempted to question Officer Dobbins as to the identity of the informant, the prosecutor asked to approach the bench and a conference was held. Appellant moved for disclosure. The prosecutor objected on the grounds of confidentiality. The court recessed the trial for a hearing in chambers as to the matter of the unidentified informant. After further examination of Officer Dobbins in chambers, appellant's attorney moved for disclosure: " * * * [F]or the reason that I don't think he qualifies as Mr. Nangle (the prosecutor) would have the court, or ask the court to believe as being a confidential informant. He's equally a participant in the alleged offense as any other police officer that was there. He was present when this was supposed to have taken place. He's identified my client to the Police Officer, and indicated to him that he was Vincent Wandix, and *I think that in fact he is the only other lay-witness to this .case*, that would be available to either side. I don't know who he is but he is or has a part in this matter in this issue or controversy in dispute. *There is alibi defense pleadings in this case;—there are alibi defense witnesses that have been endorsed, and this unidentified individual is the only other lay-witness who can contradict, disspell [sic], or prove the issues that are in controversy except the government witnesses,* and I don't think this defendant can have a fair trial if the State cloaks him as an unidentified confidential informant, * * *." (Emphasis added.)

The motion was overruled, "at this * * particular time during the trial."

A further hearing on the Motion to Disclose was held in chambers during the testimony of Officer McDonald. This was after Officer Bates had testified that the informant accompanied Dobbins and Wandix into the residence at 942 South Taylor. After McDonald was examined in chambers the court ruled finally on the Motion to Disclose. After taking cognizance of defendant's alibi defense, the court overruled the motion, citing *State v. Taylor,* 508 S.W.2d 506 (Mo.App.1974).

We must conclude from the record that the trial court and the parties recognized that identity was a crucial issue in the case.

We turn then to the essential question whether the informant's identity should have been disclosed to appellant.

In *Roviaro v. United States,* 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–629 (1957) the United States Supreme Court addressed our question, as follows:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher v. United States,* 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151; *In re Quarles and Butler,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; *Vogel v. Gruaz,* 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

\* \* \* \* \* \*

"A \* \* \* limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity \* \* \* is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

\* \* \* \* \* \*

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

The *Roviaro* concept was adopted as Missouri law by this Court in *State v. Edwards,* 317 S.W.2d 441 (Mo. banc 1958). *See* also *State v. Yates,* 442 S.W.2d 21 (Mo.1969); *State v. Nafziger,* 534 S.W.2d 480 (Mo.App. 1969).

In *Roviaro,* the court posited three possible defenses for which the informant's testimony could be vital: entrapment, *mistaken identity of the person* or package, and lack of knowledge of the contents of the package. *Roviaro, supra,* 353 U.S. at 64, 77 S.Ct. 623; *Nafziger, supra,* 534 S.W.2d at 482.

The State argues that appellant has failed to show that the testimony of the informant would in fact be exculpatory. The *Roviaro* rule requires disclosure where the informant's testimony " \* \* \* is critical to the issue \* \* \* " or " \* \* \* highly relevant to the issue \* \* \*," *Nafziger, supra,* 534 S.W.2d at 483. The State also argues that disclosure is not necessary where the informant did not participate in the transaction. As the court stated in *Nafziger,* however: "The State's insistence upon the requirement of participation has some support in the literal language of the cases, but an examination of the facts of the cases indicates that participation as it is used in the language of the cases is, in reality, a reference to the presence of the informant at some critical stage of the proceedings so that he is qualified to testify concerning essential facts in the case." *Id.* at 482.

In summary, the rule requires disclosure where the informant was in a position to offer testimony relevant and crucial to the defense; *i. e.* disclosure would not be required if the testimony were on minor or collateral issues or if the testimony would be merely cumulative of that of other neutral parties. The degree of cruciality necessary to require disclosure must be balanced against the State's need for non-disclosure; *i. e.* possible non-disclosure where the informant is still active in other investigations and the accused's need is minimal.

The crucial issue in the instant case was the identity of the drug seller. It is undisputed that the person who sold the drugs was the person introduced to the undercover officer by the informant. The informant at least observed the officer and the seller enter the house on South Taylor. Whether the informant actually entered the house as well is irrelevant to the question of his ability to testify as to identity; there is no suggestion that anyone else was in the house. The informant was thus in a position to offer highly relevant and material testimony. The appellant's need for the testimony was great. He had alibi witnesses, but there were no other witnesses who could offer direct testimony except for the police officers. In such circumstances of relevancy and need, the State's interest on balance, is weak. This was not an "active" informant who was still being used in ongoing investigations. Although the informant had provided useful and accurate information in other cases, that information was supplied only in the eight months immediately subsequent to the sale at issue. The trial occurred some 21 months after the sale, or 13 months after the informant stopped supplying information. The State's need is minimal. Although the State may have some interest in being able to tell an informant that his identity will never be revealed, even after he is inactive, this interest is not of sufficient magnitude to justify non-disclosure where the informant could provide relevant testimony at trial.

We must conclude that disclosure of the identity of the informant was "essential to a fair determination" on the facts and issues of this case. The trial court abused its discretion in failing to require disclosure.

The judgment is reversed and the case is remanded for new trial.

BARDGETT, C. J., and SEILER and WELLIVER, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

MORGAN, J., and FINCH, Senior Judge, dissent and concur in separate dissenting opinion of RENDLEN, J.

HIGGINS, J., not sitting because not a member of the Court when cause was submitted.

RENDLEN, Justice, dissenting.

For reasons herein set forth I respectfully dissent.

The identity of an informant who is but an observer or minor participant in a criminal transaction need not be disclosed when, as here, no showing is made that the informant's testimony would be other than cumulative or repetitive of the state's evidence. Accordingly, the trial court's refusal to require disclosure was not error and the judgment of conviction should be affirmed.

The essential facts are not complex and though set forth by the majority, are reiterated for ready comparison with the other cases hereinafter discussed. On July 23, 1975, at about 5:30 p. m., Officers Dobbins and Bates of the St. Louis Police Department accompanied an informant, who had been introduced to them by another officer, to a residence in the Beechum Park area. They went to find one Vincent Wandix for the purpose of arranging a heroin purchase and the informant was to introduce Dobbins to defendant Wandix. Locating Wandix without apparent difficulty informant made the introduction stating, "This is a partner of mine" and identified Wandix by name. After the initial conversation Wandix told Dobbins "to follow him" whereupon Dobbins, the informant and Bates (who was picked up en route) followed Wandix as he drove a Cadillac [1] automobile to 952 South Taylor. Bates, playing a backup role, was dropped off near the corner about three houses from the South Taylor residence. According to Dobbins, who was immediately involved at the scene, informant remained in the car and did not enter the house. From Bates' position down the street, it appeared to him that Wandix, the

1. Dobbins testified that Wandix was driving a 1973 Cadillac convertible with a red top over a white body. Officer Bates described the car as a late model red Cadillac.

informant and Dobbins entered the 952 South Taylor residence.[2] I believe the variance in the proof as to whether informant went into the house or remained outside is not controlling, for (1) if he remained outside as Dobbins [whose vantage point was considerably better than Bates] described, he was neither a participant in nor an observer of the crime; or (2) if he went inside there is no testimony he was an observer much less a participant and only by way of conjecture or speculation can he be so connected. The direct testimony of Dobbins was to the contrary.

Inside the residence Wandix asked Dobbins what he wanted and Dobbins responded that he "needed two things." Wandix then walked down the hallway, returning in a few minutes with 20–30 capsules in a plastic container from which he removed two capsules and exchanged them with Dobbins for $20.00. Laboratory analysis disclosed the capsules contained heroin.

Both officers, based on their protracted personal observation of Wandix, made positive in-court identifications.

During trial (three previous proceedings had ended in mistrial) defendant made his unseasonable request that informant's name be disclosed, which I believe was properly refused.

This case is strikingly similar to *State v. Tilcock*, 522 S.W.2d 60 (Mo.App.1975). There an informant introduced an illicit drug seller to an undercover police officer in a tavern. The three men retired to a hallway in the rear of the tavern where informant, acting as a lookout, stood five or six feet away from the spot where the officer and the accused bought and sold amphetamine sulfate. On those facts the court of appeals considering the effect of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), upheld the trial court's denial of defendant's motion for disclosure of the confidential informant because the informant's participation was minor and another witness was present.

Another case remarkably close on its facts is *State v. Taylor*, 508 S.W.2d 506 (Mo.App.1974). In *Taylor* the informer went with the police officer into the residence where the transaction occurred and there, as in the case at bar, the *informer was not the sole participant*. Further, there was strong testimony establishing the identity as well as the guilt of defendant. The court of appeals held the trial judge properly denied defendant's request for disclosure of the informant's identity. I believe the carefully reasoned opinions in *Tilcock* and *Taylor* are persuasive and the rationale there expressed should be applied in our case. However, the majority, contrary to *Taylor* and *Tilcock*, would reverse relying on *Roviaro v. United States*. That reliance, I submit, is misplaced because affirmance here would not be contrary to, but instead consistent with the holding of *Roviaro*. In *Roviaro*, this significant statement appears: "the Government's informer was the *sole participant*, other than the accused, in the transaction charged." 353 U.S. at 64, 77 S.Ct. at 630. (Emphasis added.) Thus, if Officer Dobbins had not testified and the state had sought to withhold his identity, *Roviaro* would require disclosure as to Dobbins for he was the sole participant.

The test for determining disclosure discussed in *Roviaro* requires a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense. This determination depends upon such facts as the crime charged, possible defenses, the likely significance of the informer's testimony and other relevant factors. 353 U.S. at 62, 77 S.Ct. 623. It is important that we undertake a detailed examination of that decision.

The *Roviaro* court characterized the right of the state to guard an informant's identity as the informer's privilege or government privilege. As the court explained, 353 U.S. at 59, 77 S.Ct. at 627, "The purpose of

---

**2.** Police officer Michael McDonald, also involved in the surveillance, testified that driving in a separate car, he followed Dobbins and Bates to Beechum Park and saw them there with the informant. Maintaining this loose surveillance, he later drove to the South Taylor area and saw the three men in their car in the vicinity of the Wandix residence.

the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Defendant Roviaro was charged in two counts by a federal grand jury in connection with illicit sale and possession of heroin and the indictment itself (unlike the case at bar) clearly showed the deep involvement of the informer. As stated in the opinion, Count I charged that he sold heroin to one "John Doe" and Count II charged him with fraudulently and knowingly receiving, concealing, buying and facilitating the transportation and concealment after importation of heroin. 353 U.S. at 55, 77 S.Ct. 623. "John Doe" (the informant) was expressly mentioned as the participant to whom the accused made the sale charged in Count I and though "John Doe" was not expressly mentioned in the second count, "Doe" was closely tied and implicitly a participant (on behalf of the state) to that charge as well. 353 U.S. at 63, 77 S.Ct. 623.

The controlling facts of *Roviaro* were as follows: The informant met with four police officers and, apparently by prearrangement, one of the officers secreted himself in the trunk of the informant's Cadillac automobile. The informant, alone in the passenger compartment, drove his automobile to a particular location in Chicago. After about one hour's wait, Roviaro (the accused) arrived in a Pontiac automobile and immediately (again apparently by prearrangement) entered the informant's Cadillac taking a front seat beside the informant. Roviaro greeted the informant and directed him where to drive. These two were the only persons in the passenger compartment of the vehicle as they drove a circuitous route to another location in the city. At one point Roviaro admonished informant "to pull over to the curb, cut the motor, and turn out the lights so as to lose a 'tail.'" Roviaro then told the informant to continue "further down." He then asked about money which the informant owed him and advised the informant that he had brought

him "three pieces at this time." Shortly thereafter Roviaro ordered the car stopped, alighted, walked a few feet to a nearby tree where he picked up a small package, returned to the open right front door of the Cadillac, made a motion as if depositing a package in the car, then waved to the informant and walked away. As he was doing this, Roviaro said "here it is" and "I will call you in a couple of days." The officer hidden in the trunk then emerged and another who had been following at a distance in another car went to the Cadillac, recovered the package from the floor of the car which contained "three glassine envelopes containing a white powder." The powder was heroin. Roviaro was arrested at his home and when taken to the police station was confronted by the informant and, significant to the decision, informant denied that he knew or had even seen Roviaro. 353 U.S. at 56–58, 77 S.Ct. 623.

The Court, requiring disclosure, pointed to the following facts, only one of which (*i. e.*, # (4) set forth below) is similar to the case *sub judice*. (1) The indictment, Count I, referred specifically to the sale of heroin to "John Doe" and did so by implication in Count II. (2) So far as Roviaro knew, he and "John Doe" were alone and unobserved during the crucial occurrences for which he was indicted. (3) Most important, "The *government's informer was the sole participant,* other than the accused, in the transaction charged." (Emphasis added.) (4) The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. In our case the informant could add or detract only as to preliminary matters, not the facts of the crime. Thus, even as to this fact the cases are dissimilar. (5) A government witness testified that "Doe" [the informant] denied knowing petitioner or ever having seen him before the confrontation at the police station immediately after the arrest. (6) An additional distinguishing factor appears at page 55, 77 S.Ct. 623 where the court referred to the informer not as a mere police "stool pigeon" but instead "an undercover employee" who took a material part in

89

bringing about the possession of certain drugs by the accused. Three of the police officers described "Doe" as an informer and a "special employee." From this it appears that "Doe" was more than the usual "informant" and had sufficient police connection to bolster defendant's claim that here was a man whose identity should be disclosed.

The Court concluded "that, *under these circumstances* the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." 353 U.S. at 65, 77 S.Ct. at 630. (Emphasis added.) From this examination of the salient facts upon which the court based its decision, I do not see how it can be said that *Roviaro* requires reversal in the case at bar. The dispositive facts here stand in stark contrast. Instead, it can be more reasonably stated from the facts and general language of the opinion, that *Roviaro* is authority for denying disclosure and upholding the conviction. Further it should be noted that the court stated, "We believe that *no fixed rule* with respect to disclosure is justifiable. The problem is one that calls for balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the *particular circumstances of each case* taking into consideration the crime charged, the possible defenses, the *possible significance* of the informer's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 628–29. (Emphasis added.) In that connection the Court referenced several cases wherein several courts of appeals had considered the government's right to withhold the identity of an informer. Among those was *Sorrentino v. United States,* 163 F.2d 627 (9th Cir. 1947), in which the accused was charged with both sale and possession of narcotics. The government agent saw the accused go into a house with the informer after arrangements for a sale had been overheard and the informer later delivered the narcotics to the agents. There, the informer was, as in *Roviaro,* the sole

participant. Discussing *Sorrentino,* the court went on to state, "[t]he Ninth Circuit stated that the accused was entitled to disclosure under these circumstances, but the conviction was affirmed on the ground that the record demonstrated that the accused knew the identity of the informer." 353 U.S. at 62 n. 12, 77 S.Ct. at 628. Obviously, the same is true in the case before us for it was the informer who arranged the meeting between the police officers and the accused, introduced them to the accused, knew where he could be found and knew his name. Apparently relying on his knowledge of the informant and his relationship with him, Wandix invited Dobbins and the informant to follow him to the Taylor Street residence and there the sale was made.

Finally, in a strongly written dissent which would have denied disclosure of the identity of even the *sole participant* informant in *Roviaro,* Mr. Justice Clark made this statement which history tells us was prophetic and is tragically cogent today. Explaining the decision's destructive effect on the enforcement of the narcotics laws, Justice Clark stated:

The short of it is that the conviction of a self-confessed dope peddler is reversed because the Government refused to furnish the name of its informant whose identity the undisputed evidence indicated was well known to the peddler. Yet the Court reverses on the ground of 'unfairness' because of the Government's failure to perform this fruitless gesture. In my view this does violence to the common understanding of what is fair and just.

First, it is well to remember that the illegal traffic in narcotic drugs poses a most serious social problem. One need only read the newspapers to gauge its enormity. No crime leads more directly to the commission of other offenses. Moreover, it is a most difficult crime to detect and prove. Because drugs come in small pills or powder and are readily packaged in capsules or glassine containers, they may be easily concealed. They

can be carried on the person or even in the body crevasses where detection is almost impossible. Enforcement is, therefore, most difficult without the use of "stool pigeons" or informants.

Their use has long had the approval of the courts. To give them protection governments have always followed a policy of nondisclosure of their identities. Experience teaches that once this policy is relaxed—even though the informant be dead—its effectiveness is destroyed. Once an informant is known the drug traffickers are quick to retaliate. Dead men tell no tales. The old penalty of tongue removal, once visited upon the informer Larunda has been found obsolete. 353 U.S. at 66–67, 77 S.Ct. at 630–31.

Here, the majority with little mention of the *Roviaro* facts has seized upon a part of the general language in the decision and carried it beyond the contextual limits of the case. It would permit a defendant in any case where an informant was a mere bystander or observer to make the vague conclusory allegation that the informant, who observed facts preliminary to an actual sale of narcotics, might be of help and on such a general allegation disclosure would be required. This it does without requiring that (1) defendant first show the reasonable likelihood that informant's testimony would be of reasonable benefit to him, or (2) there be a showing, as in *Roviaro* that he participated in the commission of the crime.

In short, the mischief resulting from the majority's opinion which unreasonably extrapolates the general language of *Roviaro* would effectively destroy the privilege of the confidential informer in drug cases and require disclosure on the basis of mere speculation that an informant might be able to help the defendant in some way by "amplifying" or denying testimony of the police officer. This would be so, where as here, an informant gives information and merely leads the police officers to a place where the drug peddler is conducting his business. Such was not the intent of *Roviaro* and constitutes an unwarranted extension of the holding in that case which can only lead to stultification of our law enforcement system by effectively removing one of the state's most valuable enforcement tools, the confidential informant. This radical departure should not be adopted as the law in Missouri and indeed in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Supreme Court reexamining *Roviaro* ten years later made clear that it should not be read broadly to require disclosure of an informant's identity in various procedural stages of criminal prosecutions, that there is no justification for a fixed rule with respect to disclosure and reiterated that in *Roviaro* the informer "was the sole participant, other than the accused." *Id.* at 310–311, 87 S.Ct. at 1062. The *McCray* Court reemphasized that a most important consideration before disclosure would be required was "the possible significance of the informer's testimony." *Id.* Stated otherwise, the trial court need not blindly accept defendant's assertion that the informant's testimony would be helpful. Instead, it must first determine the reasonable likelihood of such "helpful testimony" and thereafter weigh such "fact" in the balance.

Numerous courts have applied the *Roviaro* balancing test to the disclosure issue and have held that the name of an informant, though a minor participant in a criminal transaction and an eyewitness to the transaction in question, need not be disclosed.[3]

---

**3.** Although the great weight of authority since *Roviaro* supports the proposition that the identity of a confidential informant who plays only a minor part in a criminal transaction need not be disclosed, some courts have reached a different result. See *People v. Goliday*, 8 Cal.3d 771, 778–779, 106 Cal.Rptr. 113, 505 P.2d 537 (Cal.1973). That decision was based partially on Cal.Evid.Code, § 1041. The Texas Court of Criminal Appeals has held that the identity of an *eyewitness participant* must be disclosed. *James v. State*, 493 S.W.2d 201, 202 (Tex.Crim. App.1973). However, *James* has been distinguished on two recent occasions by the same court. *Etchieson v. State*, 574 S.W.2d 753, 757 (Tex.Crim.App.1978); *Carmouche v. State*, 540 S.W.2d 701, 703 (Tex.Crim.App.1976). In *People v. Lewis*, 57 Ill.2d 232, 311 N.E.2d 685, 689 (Ill.1974), the Illinois Supreme Court also held that a defendant has a right to interview a

As hereinabove noted there is some question in the evidence whether informant was present when the transaction occurred, but the more plausible testimony demonstrated he was not and that his observations included only the parties' preliminary meeting.[4]

The United States Court of Appeals for the First Circuit recently confronted the disclosure issue on a similar fact pattern in *United States v. Estrella,* 567 F.2d 1151 (1st Cir. 1977). There, a confidential government informant arranged a sale between an undercover agent and the defendant and was an eyewitness to two final purchases of heroin. The court, rejecting a *Roviaro* based claim stated,

> . . . [t]he informant neither dealt directly with Alicea in any manner, [citations omitted] nor was he a *significant participant* in the criminal events. . . The informant's contribution could at best be marginal [citations omitted] and there is no indication that his testimony would be other than cumulative of that offered by the Government's witnesses who were present.

*Id.* at 1153. (Emphasis added.) In our case, if we assume informant was present at the final transaction, there is absolutely no evidence suggesting he was a participant much less a significant participant. Moreover, appellant here failed to indicate any "concrete circumstances" that would justify disclosure and failed to offer any evidence indicating the informant's testimony would be other than a reiteration of the state's evidence. 567 F.2d at 1153.

In *United States v. Alonzo,* 571 F.2d 1384 (5th Cir. 1978), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), the informant was present when numerous sales of narcotics occurred. The court rejected the contention that failing to disclose the identity of the informant was error stating, "It is well settled that the government is not required to disclose the identity of an informant who is a mere tipster and not an active participant in the offense charged even though he was present during the transaction in question." *Id.* at 1387. *Accord, United States v. Morris,* 568 F.2d 396, 399–400 (5th Cir. 1978); *United States v. McGruder,* 514 F.2d 1288, 1291 (5th Cir. 1975); *cert. denied,* 423 U.S. 1057, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976); *United States v. D'Amato,* 493 F.2d 359, 366 (2d Cir. 1974), *cert. denied,* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 50 (1974). Certainly in this case where it is shown that the informant merely introduced Wandix to the officer and followed him to the house (or may have entered) in which the crime was committed, the trial court did not abuse its discretion in denying the motion for disclosure. In *State v. Milligan,* 71 N.J. 373, 365 A.2d 914 (N.J. 1976), the New Jersey Supreme Court recently dealt with the disclosure issue under facts nearly identical to ours. An informant accompanied a police officer to a street corner location where he introduced the officer to defendant and observed as a sale was arranged. Subsequently all three drove to the defendant's house and while the informer was out of the room, the sale was made. The New Jersey Supreme Court concluded that given the informer's limited involvement in the crime and the speculative significance of the testimony, the defendant did not demonstrate that his interests outweighed the state's interest in nondisclosure. There, as here, the informant's role was minor and the significance of his possible testimony a matter of conjecture.

---

confidential informant who is an eyewitness participant to a drug transaction. These cases are readily distinguishable from that before us because here there has been no showing that informant witnessed the heroin sale.

4. A distinction has been made between participant informants (those who have introduced police officers to the suspect or aided in arranging a sale) and those who merely provide information. *State v. McCann,* 543 S.W.2d 504

(Mo.App.1976). "The likelihood that fundamental fairness will require the disclosure of the identity of the latter group is substantially less." *Id.* at 507. But participation alone is not enough to require disclosure and is but one aspect of the multi-factor analysis required. *State v. Taylor,* 508 S.W.2d at 512; *Roviaro v. United States,* 353 U.S. at 62, 77 S.Ct. 623. See *State v. Milligan,* 71 N.J. 373, 365 A.2d 914, 922 (N.J.1976).

Similarly, the Colorado Supreme Court in *People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (Colo.1976) ruled against disclosure on a case involving an anonymous informant who arranged a meeting of an undercover officer and a seller of heroin. The informant and the officer went to the seller's house where the informant introduced him to the officer. Next, informant asked the seller whether he had the heroin. The seller replied affirmatively and handed a red balloon filled with heroin to the informant who in turn handed it to the officer who paid for the drug. On those facts, the Colorado Supreme Court upheld the ruling of the trial court denying disclosure. Clearly, the informant's involvement in our case was minimal compared to that of the informer in *Marquez*.

Iowa, in *State v. Sheffey*, 243 N.W.2d 555, 559–560 (Iowa 1976), faced a similar fact pattern in which a confidential informant introduced an undercover police officer to a seller of amphetamines and was present when a sale took place. The officer and informant then departed. The Iowa court, reasoning that the seller could reasonably be deemed to know the informant and that the seller made no more than a speculative showing that the informant's testimony would have been helpful, held the denial of disclosure proper.

It is generally recognized that defendant has a significant burden of proving that the disclosure of a confidential informant is necessary for a fair determination of defendant's case and that the need outweighs the government's interests. Mere speculation on the defendant's part that the testimony of the confidential informant will be helpful is not enough. *In re United States*, 565 F.2d 19, 23 (2d Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1970); *United States v. Marshall*, 532 F.2d 1279, 1282 (9th Cir. 1976); *United States v. Alvarez*, 472 F.2d 111, 113 (9th Cir. 1973), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); *United States v. Skeens*, 145 U.S.App.D.C. 404, 408, 449 F.2d 1066, 1070 (D.C.Cir. 1971). In the case at bar, defendant has offered only his conclusory assertion (belatedly made by his oral motion during trial) that the informant's testimony might be helpful. This may legitimately be characterized as speculation and conjecture hardly sufficient to meet the significant burden described in the flood of cases interpreting *Roviaro*. In sum, it strains credulity to believe that the informant would offer any testimony helpful to appellant's cause. From the evidence, it is clear that informant and defendant knew one another. Informant knew Wandix by name, knew his business and where to find him. It is equally apparent that Wandix knew informant because solely on the informant's word he was willing to accept a new acquaintance (Dobbins) and take him to his (Wandix) home and there to deal in heroin. How can we give unquestioned credence to the defendant's contention that he did not know the informant or claim the state "cloaked" him from defendant?[5] If we

---

5. During the testimony the first day of the fourth trial of this cause the following occurred:

MR. SCHWARTZ: [defense counsel] At this time, Judge we make an oral Motion and request that the State disclose the name and address of this so-called individual that was present during the course of this incident for the reason that I don't think he qualifies as Mr. Nangle would have the court, or ask the Court to believe as being a confidential informant. He's equally a participant in the alleged offense as any other police officer that was there. He was present when this was supposed to have taken place. He's identified my client to the Police Officer, and indicated to him that he was Vincent Wandix, and I think that in fact he is the only other lay-witness to this case, that would be available to either side. I don't know who he is, but he is or has a part in this matter in this issue or controversy in dispute. There is alibi defense pleadings in this case; there are alibi witnesses that have been endorsed, and this unidentified individual is the only other lay-witness who can contradict, disspell, or prove the issues that are in controversy except the government witnesses, and I don't think this defendant can have a fair trial if the State cloakes [sic] him as an unidentified confidential informant, and doesn't let us try to ascertain what his testimony would be—if it would help this defendant, and help Mr. Wandix in counteracting any of the evidence in this case. And I think they are cloaking him as a confidential informant without some other information.

somehow assume defendant did not know his name, this fact does not change the compelling inference that defendant knew the man and thus dilute his counsel's belated claim that, "I don't know who he is. . . ." Also, there is little or no likelihood that defendant could have obtained beneficial testimony from the informant. This, coupled with the fact two police officers positively identified Vincent Wandix and one of them testified directly on the commission of the crime is also supportive of the court's refusal to sustain defendant's request for disclosure. See *United States v. Soles*, 482 F.2d 105, 109 (2d Cir. 1973), *cert. denied,* 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973); *United States v. Davis*, 487 F.2d 1249, 1251 (5th Cir. 1973); *United States v. Russ*, 362 F.2d 843, 845 (2d Cir. 1966), *cert. denied*, 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1967).

I would hold that when a confidential informant is a minor participant in a transaction and the defendant makes no showing that the informant's testimony would be other than cumulative and repetitive of the state's evidence, the trial judge does not abuse his discretion in denying disclosure. *State v. Redding*, 357 S.W.2d 103, 108 (Mo. 1962); *State v. Edwards*, 317 S.W.2d 441, 447 (Mo.1958). For these reasons, the judgment of the trial court should be affirmed.

On Motion For Rehearing

PER CURIAM:

In asserting the principal opinion "would effectively destroy the privilege of the confidential informer in drug cases" and "can only lead to stultification of our law enforcement system by effectively removing one of the state's most valuable enforcement tools, the confidential informant," the dissent misinterprets the language of the principal opinion and overstates its intended effect.

The principal opinion does not presume to declare *new* law as to *the informer's privilege*. It represents at most an application of the *Roviaro* balancing test, adopted by this Court in *State v. Edwards*, 317 S.W.2d 441

(Mo. banc 1958), to a rather unique fact situation. *The informer's privilege* remains intact as reflecting the strong public policy of this state, and should be honored except in those cases where there exists "the possibility of any real and substantial prejudice to the defendant, in the bona fide preparation of his case, from a failure to divulge the name." *Edwards*, 317 S.W.2d at 449 (Eager, J., concurring and speaking for a plurality).

The state's motion for rehearing is overruled.

BARDGETT, C. J., and DONNELLY, SEILER and WELLIVER, JJ., concur.

RENDLEN and MORGAN, JJ., and FINCH, Senior Judge, dissent.